MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice pending*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
Facsimile: (212) 849-5647
lrgoldman@mayerbrown.com

Archis A. Parasharami (*pro hac vice pending*)
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
Facsimile: (202) 263-5238
aparasharami@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FREDERICK WILLIAM GULLEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:16-cv-00937-HSG<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: April 28, 2016<br>Time: 2:00 p.m.<br>Location: Courtroom 10, 19th Floor<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>[*Request for Judicial Notice and Proposed Order filed concurrently herewith*] |

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| STATEMENT OF THE ISSUE TO BE DECIDED | 2 |
| BACKGROUND | 2 |
|     A.  Facebook And Its Tag Suggestions Feature | 2 |
|     B.  The Illinois Biometric Information Privacy Act And Plaintiff's Claim | 3 |
| ARGUMENT | 5 |
| I.  THE PLAIN LANGUAGE OF THE BIPA EXPRESSLY EXCLUDES FROM THE STATUTE'S REACH PHOTOGRAPHS AND ANY INFORMATION DERIVED FROM PHOTOGRAPHS | 5 |
| II.  COLLECTING INFORMATION FROM PHOTOGRAPHS DOES NOT CONSTITUTE A "SCAN OF HAND OR FACE GEOMETRY" WITHIN THE MEANING OF THE BIPA | 6 |
|     A.  Liability Under The BIPA Attaches Only To Biometric Identifiers And Information Derived From Them | 7 |
|     B.  The Phrase "Scan Of Hand Or Face Geometry" Describes An In-Person, Physical Scan | 8 |
| III.  PLAINTIFF'S ARGUMENT CANNOT BE SQUARED WITH THE LEGISLATIVE FINDINGS AND HISTORY | 10 |
| CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ASW v. Oregon*,
  424 F.3d 970 (9th Cir. 2005) ................................................................................................... 5

*Gadda v. State Bar of Cal.*,
  511 F.3d 933 (9th Cir. 2007) ............................................................................................ 11-12

*Maksym v. Bd. of Election Comm'rs*,
  242 Ill. 2d 303 (2011) ............................................................................................................. 9

*McCoy v. Chase Manhattan Bank, USA, Nat'l Ass'n*,
  654 F.3d 971 (9th Cir. 2011) ................................................................................................... 5

*Mich. Ave. Nat'l Bank v. Cnty. of Cook*,
  191 Ill. 2d 493 (2000) ........................................................................................................ 6, 10

*Norberg v. Shutterfly, Inc.*,
  2015 WL 9914203 (N.D. Ill. Dec. 29, 2015) ....................................................................... 7, 8

*People v. Diggins*,
  235 Ill. 2d 48 (2009) ............................................................................................................... 6

*People v. Qualls*,
  365 Ill. App. 3d 1015 (2006) .................................................................................................. 9

*People v. Trainor*,
  196 Ill. 2d 318 (2001) ............................................................................................................. 7

*Puritan Fin. Corp. v. Bechstein Constr. Corp.*,
  366 Ill. Dec. 335 (Ill. App. Ct. 2012) ...................................................................................... 8

*S. Illinoisian v. Ill. Dep't of Pub. Health*,
  218 Ill. 2d 390 (2006) ............................................................................................................. 5

*Skokie Castings, Inc. v. Ill. Ins. Guar. Fund*,
  2013 IL 113873 (Ill. Oct. 18, 2013) ...................................................................................... 10

*United States v. Williams*,
  553 U.S. 285 (2008) ................................................................................................................ 8

**STATUTES AND RULES**

740 ILCS 14/5(a) .................................................................................................................. 3, 10

740 ILCS 14/5(b) .................................................................................................................. 3, 10

**TABLE OF AUTHORITIES**
(continued)

Page

740 ILCS 14/5(c) ...................................................................................................................3, 10

740 ILCS 14/5(d) ..........................................................................................................................3

740 ILCS 14/5(e) ...................................................................................................................3, 10

740 ILCS 14/10 ..................................................................................................................... *passim*

740 ILCS 14/15(a) ........................................................................................................................4

740 ILCS 14/15(b) ........................................................................................................................4

740 ILCS 14/20(1) ........................................................................................................................5

740 ILCS 14/20(2) ........................................................................................................................5

**OTHER AUTHORITIES**

IL H.R. Tran. 2008 Reg. Sess. No. 276 (May 30, 2008) ...........................................................3, 11

Ill. S. J., 2008 Reg. Sess. No. 167 (July 10, 2008) ......................................................................11

Senate Bill 2400, § 10 (Feb. 14, 2008) ........................................................................................11

Senate Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) ....................................................11

House Amendment to Senate Bill 2400, § 10 (May 28, 2008) ....................................................11

Facebook, *Sign Up*,
    https://www.facebook.com/r.php ...........................................................................................2

Facebook, *Tag Suggestions*,
    https://www.facebook.com/help/463455293673370 .............................................................3

Nat'l Sci. & Tech. Council, Subcomm. on Biometrics, *Hand Geometry* (Aug. 7, 2006),
    http://www.biometrics.gov/documents/handgeometry.pdf ....................................................9

U.S. Customs & Border Protection, *Global Entry*,
    http://www.cbp.gov/travel/trusted-traveler-programs/global-entry .......................................9

| | |
|---|---|
| 1 | **NOTICE OF MOTION & MOTION TO DISMISS** |
| 2 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD: |
| 3 | PLEASE TAKE NOTICE THAT, on April 28, 2016, at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., defendant Facebook, Inc. ("Facebook") will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Amended Complaint (Dkt. 1, Ex. 1, pp. 38-51) filed by Plaintiff Frederick William Gullen. Facebook moves to dismiss the lawsuit on the grounds that Plaintiff cannot state a claim under the Illinois Biometric Information Privacy Act. |
| 9 | Facebook's motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, Facebook's Request for Judicial Notice ("RJN"), any reply memorandum that Facebook may file, the pleadings, papers and other documents on file in this action, and such other evidence and argument presented to the Court at or prior to the hearing in this matter. |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This suit challenges Facebook's use of facial-recognition technology in connection with a product feature that enables people who use Facebook to more easily tag their Facebook friends in the photos that they upload to Facebook. This feature applies to, and is available only to, people who have Facebook accounts. Plaintiff Frederick William Gullen alleges that he does *not* have a Facebook account. He nevertheless speculates that he was impacted by this feature, called "Tag Suggestions," when an unspecified third party allegedly uploaded a picture of him to Facebook and labeled it with his name.

Plaintiff asserts a claim for violation of the Biometric Information Privacy Act (the "BIPA"), an Illinois statute enacted in 2008 to regulate the use of biometric technologies (such as retina scans, fingerprints, and voiceprints) in connection with financial transactions and security screenings—not photo-tagging features offered by services like Facebook. Plaintiff has no viable challenge to a feature that does not apply to people without a Facebook account. But even assuming the truth of plaintiff's allegations for purposes of this motion, the complaint should be dismissed because plaintiff cannot state a claim under the BIPA as a matter of law. The BIPA applies only to "biometric identifiers" and "biometric information." 740 ILCS 14/10. The statute expressly defines those terms to *exclude* both "photographs" and any "information derived from" photographs. *Id.* Because plaintiff's claim rests entirely on information derived from photographs, his complaint should be dismissed with prejudice.

**STATEMENT OF THE ISSUE TO BE DECIDED**

1. Whether plaintiff has stated a claim under the BIPA.

**BACKGROUND**

**A. Facebook And Its Tag Suggestions Feature**

To use Facebook, a person must register for an account and agree to Facebook's terms of service. Facebook, *Sign Up*, https://www.facebook.com/r.php (last accessed Mar. 10, 2016). Over 1.5 billion people worldwide use Facebook to connect with their friends and family and share a wide variety of content, including photos, with them. Facebook has long enabled people to make sharing photos a more social and personal experience through "tagging." *See* Amended Compl. ¶ 22 (describing, without naming, "Tag Suggestions" and the "tagging" of user-uploaded photos more generally). Tagging allows people to sort their uploaded photos not only by the date when they were taken or uploaded, but also by the names of the people in them. If the person who is tagged uses Facebook, the tag will include a link to that person's Facebook account. For example, someone who uploads a photo of himself and six of his Facebook friends can tag not only himself in the photo, but also his six friends. The photo (and any tags) are visible only to the audience determined by the person who uploads it.

One way in which a person can tag friends in a photo is by typing in their names manually. In 2010, Facebook started rolling out a feature called "Tag Suggestions" to make it easier for people to tag their Facebook friends in photos. *See id.* ¶ 22 (describing this feature without naming it). Facebook uses facial-recognition technology to analyze photos that are uploaded to its service by people with registered accounts, and then uses the information derived from the photos to make suggestions about which Facebook friends to tag. *Id.* ¶¶ 5, 20-22, 28 (alleging that Facebook scans "user-uploaded photo[s]" and derives from those photos "geometric data" about a person's face, such as "the distances between [a person's] eyes, nose and ears"). Plaintiff alleges that the information derived from these photographs is then saved by Facebook as a "template." *Id.* ¶¶ 5, 20, 22, 28. Plaintiff's claim rests entirely upon the information that he alleges was derived from photos uploaded to Facebook.

The foregoing description of Facebook's Tag Suggestions feature is drawn from the

- 2 -

complaint. We note, however, that in other important respects, the complaint's description of this feature, and of tagging more generally, is materially incorrect or incomplete. Most notably, Tag Suggestions does not apply to people without Facebook accounts. If a person who is tagged in a photo on Facebook does not have a Facebook account, Facebook does not—contrary to paragraph 22 of the complaint—save a "face template" and "corresponding name identification" in its "database." People who *do* have Facebook accounts, moreover, can choose to turn off the Tag Suggestions feature at any time, in which case Facebook will delete the "template" and no longer suggest that person in photos uploaded by his or her friends. Facebook, *Tag Suggestions*, https://www.facebook.com/help/463455293673370 (last accessed Mar. 10, 2016). All of that having been said, these factual inaccuracies in the complaint make no difference for purposes of this motion because, even as pleaded, plaintiff's claim fails as a matter of law. *See* pp. 5-12, *infra*.

### B.    The Illinois Biometric Information Privacy Act And Plaintiff's Claim

The BIPA is a narrowly-written law that was enacted in 2008 to address the "growing" use of biometric data "in the business and security screening sectors." 740 ILCS 14/5(a). The legislature found that "[m]ajor national corporations have selected . . . Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." *Id.* 14/5(b). It stated that consumers were wary "of the use of biometrics when such information is tied to finances," and might be "deterred from partaking in biometric identifier-facilitated transactions" without "State law regulating the collection, use, safeguarding, and storage of biometrics." *Id.* 14/5(d), (e). Of particular concern to the legislature, a company that stored fingerprint scans had filed for bankruptcy; it was unclear what would happen to the scans. RJN Ex. 1 (IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (Statement of Rep. Ryg)).

The BIPA addresses these concerns by regulating the collection and storage of "biometric identifiers" and "biometric information." The definitions of these terms reflect the statute's focus on "biometric-facilitated *transactions*." 740 ILCS 14/5(c) (emphasis added). "Biometric

1  identifiers" are certain sources of data about a person. The statute provides a short, exclusive list: "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* 14/10. Other potential identifiers are then expressly *excluded* from that definition, including "writing samples, written signatures, *photographs*, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color." *Id.* (emphasis added).

"Biometric information," in turn, is data derived from analysis of a biometric identifier: The term is defined as information "based on an individual's biometric identifier" that is "used to identify an individual." *Id.* The statute expressly states that "[b]iometric information *does not include* information derived from items or procedures excluded under the definition of biometric identifiers"—such as photographs. *Id.* (emphasis added).

The BIPA then imposes certain obligations on private entities that (1) obtain "biometric identifiers" from people and/or (2) analyze those biometric identifiers to produce "biometric information." Such an entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without first (1) informing the individual in writing that "a biometric identifier or biometric information is being collected or stored" and for what "specific purpose and length of term"; and (2) obtaining a "written release" from the individual. 740 ILCS 14/15(b). In addition, a "private entity in possession of biometric identifiers or biometric information" is required to develop a publicly available written policy regarding the retention and destruction of biometric identifiers and biometric information. *Id.* 14/15(a).

Plaintiff alleges that an unknown person in an unknown location uploaded a photo to Facebook that included his likeness. Amended Compl. ¶ 27. He claims that Facebook extracted "geometric data" about his face from this photo, and saved a template containing that data in its database. *Id.* ¶ 28. Plaintiff further alleges that Facebook has engaged in similar conduct with respect to other non-Facebook users in Illinois. *Id.* ¶¶ 20-23. He seeks to represent a putative class that consists of "[a]ll non-Facebook users who, while residing in the State of Illinois, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured,

1   received, stored, used, or otherwise obtained by Facebook." *Id.* ¶ 35.  Plaintiff alleges that
2   Facebook has violated the BIPA by failing to make the requisite disclosures to, and obtain
3   adequate releases from, these individuals. *Id.* ¶¶ 40-49.  And he requests statutory damages of
4   either $5,000 per allegedly intentional and reckless violation (*see* 740 ILCS 14/20(2)) or $1,000
5   per allegedly negligent violation (*see id.* 14/20(1)); declaratory and injunctive relief; and
6   litigation expenses and attorneys' fees. *See* Amended Compl. at 12-13.

## ARGUMENT

Although Tag Suggestions does not apply to people (like plaintiff Gullen) who do not use its service, Facebook recognizes that at the motion to dismiss stage, the Court must "accept as true all well pleaded facts in the complaint." *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005). Even on plaintiff's erroneous version of the facts, however, his complaint must be dismissed because plaintiff cannot state a claim under the BIPA. The plain language of the BIPA *expressly excludes* from the definitions of "biometric identifier" and "biometric information" (i) photographs and (ii) any information derived from those photographs. The BIPA's express legislative findings and history confirm that these broad exclusions were deliberate: The General Assembly sought to regulate the use of biometric technology to facilitate financial and other secure transactions, and wanted to make clear that other types and uses of technology were not prohibited.

**I.   THE PLAIN LANGUAGE OF THE BIPA EXPRESSLY EXCLUDES FROM THE STATUTE'S REACH PHOTOGRAPHS AND ANY INFORMATION DERIVED FROM PHOTOGRAPHS.**

Illinois' statutory-construction principles govern this Court's interpretation of an Illinois statute like the BIPA. *See McCoy v. Chase Manhattan Bank, USA, Nat'l Ass'n*, 654 F.3d 971, 974-75 (9th Cir. 2011). Under Illinois law, the "primary objective" of statutory construction is to "ascertain and give effect to the intent of the General Assembly." *S. Illinoisian v. Ill. Dep't of Pub. Health*, 218 Ill. 2d 390, 415 (2006). That inquiry "begins with the plain language of the statute, which is the most reliable indication of the legislature's objectives." *Id.*  Courts must "view all provisions of an enactment as a whole," with each provision considered "in light of

[the] other relevant provisions of the statute" rather than "in isolation." *Mich. Ave. Nat'l Bank v. Cnty. of Cook*, 191 Ill. 2d 493, 504 (2000). "[N]o part [should be] rendered meaningless or superfluous." *People v. Diggins*, 235 Ill. 2d 48, 54 (2009) (quotation marks omitted).

Plaintiff recognizes that his claim rests entirely on photos that people voluntarily upload to Facebook. *E.g.*, Amended Compl. ¶¶ 5, 19-22, 27-28, 43.[1] That fact bars his claim: The BIPA expressly excludes from its coverage both photographs and any information derived from photographs. A "biometric identifier" is "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry"; "*[b]iometric identifiers do not include . . . photographs.*" 740 ILCS 14/10 (emphasis added).[2] "Biometric information" is limited to information "based on an individual's biometric identifier" and "*does not include information derived from items or procedures excluded under the definition of biometric identifiers*"—such as photographs. *Id.* (emphasis added). The plain language of the BIPA forecloses plaintiff's claim.

## II. COLLECTING INFORMATION FROM PHOTOGRAPHS DOES NOT CONSTITUTE A "SCAN OF HAND OR FACE GEOMETRY" WITHIN THE MEANING OF THE BIPA.

Ignoring the BIPA's clear exclusions of photographs and information derived from them, plaintiff alleges that "information collected about the geometry of the face"—no matter the source—is a "scan of hand or face geometry" and thus falls within the definition of "biometric identifier." Amended Compl. ¶ 16 n.6; *see also, e.g., id.* ¶¶ 5, 20-22, 28, 43. That contention is wrong.

---

[1] *See, e.g.*, Amended Compl. ¶ 5 (Facebook uses "sophisticated facial recognition technology that extracts and analyzes data" from "photos uploaded by [Facebook's] users"); *id.* ¶ 20 ("Facebook's proprietary facial recognition technology scans every user-uploaded photo for faces [and] extracts geometric data"); *id.* ¶ 22 ("when a Facebook user uploads a new photo, Facebook's sophisticated facial recognition technology creates a scan of face geometry template for each face depicted therein"); *id.* ¶ 28 ("Upon upload of Plaintiff's photograph, Facebook automatically scanned and analyzed Plaintiff's face . . . ."); *id.* ¶ 43 (Plaintiff and the putative class members had their "facial geometries extracted from uploaded digital photographs").

[2] Plaintiff avoids the BIPA's definition of "biometric identifier," instead preferring his own definition: that "[a] 'biometric identifier' is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and 'face geometry,' among others." Amended Compl. ¶ 1 n.1. That manufactured definition cannot be squared with the statutory text.

**A.     Liability Under The BIPA Attaches Only To Biometric Identifiers And Information Derived From Them.**

Plaintiff's approach ignores the structure of the statute: liability attaches under the BIPA only if the *source* of the information qualifies as a "biometric identifier." 740 ILCS 14/10. As we have just shown, photographs do not qualify.

Nor can the application of facial-recognition technology transform a photograph into a biometric identifier. The BIPA has a separate section that specifically addresses the application of technology to data that a party has collected: the provision on "biometric information," which is defined as information "based on an individual's biometric identifier" that is "used to identify an individual." *Id.* If data "extracted" from the analysis of photographs (Amended Compl. ¶¶ 20, 28, 43) were to be covered by the BIPA, it would be covered under the rubric of "biometric information." But it is not: The statute explicitly excludes from the definition of "biometric information" all "information derived from" the "items or procedures" that are excluded from the meaning of "biometric identifier," including "photographs." 740 ILCS 14/10.

The across-the-board exclusion of photographs and information derived from them would be rendered meaningless if the statute were interpreted to cover data derived from the scan of a photograph. *See People v. Trainor*, 196 Ill. 2d 318, 332 (2001) (the words of a statute "must be read in conjunction with one another and their language so construed as to make them harmonious and consistent," rather than "in a fashion that would render other words or phrases meaningless, redundant, or superfluous"). It would make no sense for the legislature to expressly exclude (1) photographs from the definition of "biometric identifier" and (2) information derived from photographs from the definition of "biometric information"—only to turn around and regulate information derived from photographs under a different label.

Facebook anticipates that plaintiff will rely on a recent decision by the Northern District of Illinois in *Norberg v. Shutterfly, Inc.*, 2015 WL 9914203 (N.D. Ill. Dec. 29, 2015). In that case, the plaintiff alleged that the defendants, operators of websites that "offer facial recognition capabilities to identify and categorize photos based on the people in the photos," were "actively collecting, storing, and using the biometrics (face geometry) of millions of individuals, who are

not the [w]ebsites' customers, in violation of the BIPA." *Id.* at *2. The court denied the defendants' motion to dismiss for failure to state a claim in a terse opinion that did not grapple with the statutory-interpretation question. The court acknowledged that the interpretation of the BIPA was a question of first impression and summarized the content of the BIPA's main provisions. But its substantive analysis of the statute was limited to the following paragraph:

> Here, Plaintiff alleges that Defendants are using his personal face pattern to recognize and identify Plaintiff in photographs posted to Websites. Plaintiff avers that he is not now nor has even been a user of Websites, and that he was not presented with a written biometrics policy nor has he consented to have his biometric identifiers used by Defendants. As a result, the Court finds that Plaintiff has plausibly stated a claim for relief under the BIPA.

*Id.* The court did not attempt to square the operation of the defendants' online photo-tagging services with the fact that the BIPA excludes photographs and information derived from them; the court did not mention these express statutory exclusions at all. Nor did it address the BIPA's legislative findings or legislative history (discussed *infra* at 10-12). Facebook respectfully submits that *Norberg* was wrongly decided and that this case warrants an independent and thorough analysis of the statute, which would lead to the opposite result from the one reached in *Norberg*.

**B.     The Phrase "Scan Of Hand Or Face Geometry" Describes An In-Person, Physical Scan.**

Plaintiff's theory also cannot be squared with the very statutory phrase on which he relies: a "*scan* of hand or face geometry." 740 ILCS 14/10 (emphasis added). Read in context, that term plainly means an *in-person* scan of a person's *actual* hand or face (which would typically occur for verification or security purposes). The meaning of the word "scan" is "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008); *see also Puritan Fin. Corp. v. Bechstein Constr. Corp.*, 366 Ill. Dec. 335, 339 (Ill. App. Ct. 2012) ("[U]nder the doctrine of *noscitur a sociis*[,] [ ]a word is known by the company it keeps . . . ." (internal quotation marks omitted)). The purpose of this

- 8 -

doctrine is "'to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words' and 'to avoid the giving of unintended breadth to a legislative act.'" *People v. Qualls*, 365 Ill. App. 3d 1015, 1020 (2006) (citation omitted).  That is precisely what plaintiff seeks to do here by claiming that a scan of a photograph—as opposed to a hand or a face—is covered by the BIPA.

The "neighboring words" in the definition of "biometric identifier"—"retina or iris scan, fingerprint, [or] voiceprint" (740 ILCS 14/10)—all describe the product of a common physical, in-person process for obtaining information about an individual that can then be used for authenticating a financial or other sensitive transaction or for accessing a secure area.  Retailers and banks often authenticate financial transactions by scanning a person's finger or hand to verify his or her identity.  In lieu of using identification cards, key fobs, or passcodes, businesses often verify an individual's identity by scanning his or her finger, hand, eye, face, or voice.[3]

Just as a "retina or iris scan" requires putting one's eye up to a console for examination and verification, so too must a "scan of hand or face geometry" require a person to present his or her hand or face itself at a console or other type of scanner, such as the ones now widely used by the government at airports.  *See generally* U.S. Customs & Border Protection, *Global Entry*, http://www.cbp.gov/travel/trusted-traveler-programs/global-entry (last accessed Mar. 10, 2016) (qualifying travelers may "enter the [U.S.] through automated kiosks," a process which involves "plac[ing] their fingerprints on the scanner for fingerprint verification").  That is because the word "scan" must be construed consistently throughout the statute.  When "the same . . . words or phrases appear in different parts of the same statute[,] they will be given a generally accepted and consistent meaning."  *Maksym v. Bd. of Election Comm'rs*, 242 Ill. 2d 303, 322 (2011) (citation omitted).  The BIPA does not apply to photographs uploaded to Facebook's platform because the pictures did not result from in-person scans of an individual's face itself.

---

[3]  *See generally* Nat'l Sci. & Tech. Council, Subcomm. on Biometrics, *Hand Geometry*, at 3 (Aug. 7, 2006), http://www.biometrics.gov/documents/handgeometry.pdf (last accessed Mar. 10, 2016) ("Hand geometry recognition systems are widely used for applications in physical access, attendance tracking, and personal verification.").

- 9 -

### III. PLAINTIFF'S ARGUMENT CANNOT BE SQUARED WITH THE LEGISLATIVE FINDINGS AND HISTORY.

This Court need not consider the legislative findings or history because the statutory text is unambiguous. *Mich. Ave. Nat'l Bank*, 191 Ill. 2d at 504. But these sources confirm that the BIPA does not apply to Tag Suggestions. The findings underscore that the statute extends only to regulating the use of biometric identifiers to "streamline[] financial transactions and security screenings." 740 ILCS 14/5(a). The General Assembly was concerned with the substitution of biometric identifiers for "other unique identifiers that are used to access finances or other sensitive information," such as "social security numbers." *Id.* 14/5(c). Thus, it sought to regulate that substitution to prevent Illinois residents from "withdraw[ing] from biometric-facilitated transactions" and to ensure that they are not "deterred from partaking" in such transactions by a "heightened risk for identity theft." *Id.* 14/5(c), (e). As an example, the legislature cited "finger-scan technologies at grocery stores, gas stations, and school cafeterias." *Id.* 14/5(b). The notion that the legislature intended the BIPA to apply to a very different set of circumstances—scanning photos uploaded to online services to assist people in tagging their friends—receives no support from the findings and statements of intent. *See, e.g., Skokie Castings, Inc. v. Ill. Ins. Guar. Fund*, 2013 IL 113873, ¶ 28 (Ill. Oct. 18, 2013) ("Legislative intent may . . . be ascertained by considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.").

The legislative history further contradicts plaintiff's reading of the BIPA. The definitions of "biometric identifier" and "biometric information" were sharply narrowed as the bill worked its way towards passage. The first version introduced in the Illinois Senate defined "biometric identifier" and "biometric information" broadly (though even then, photographs were excluded):

> "Biometric identifier" means *any indelible personal physical characteristic* which can be used to uniquely identify an individual or pinpoint an individual at a particular place at a particular time. Examples of biometric identifiers *include, but are not limited to*, iris or retinal scans, fingerprints, voiceprints, and *records of* hand or facial geometry. Biometric identifiers do not include writing samples, written signature[s], and photographs.
>
> "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to

- 10 -

identify an individual.

RJN Ex. 2 (Senate Bill 2400, § 10 (Feb. 14, 2008)) (emphases added).

A later version of the bill in the Senate changed the phrase "records of hand or facial geometry" to the broader "records or scans of hand geometry, facial geometry, or *facial recognition*." RJN Ex. 3 (Senate Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008)) (emphasis added). But that expansion was *rejected*. The Illinois House of Representatives replaced the Senate's definition of "biometric identifier" with the much narrower definition used in the statute as enacted. *See* RJN Ex. 4 (House Amendment to Senate Bill 2400, § 10 (May 28, 2008)).

The House thus (a) dropped any reference to "facial recognition"; (b) narrowed the definition of "biometric identifier" from an open-ended set of "physical characteristic[s]" to a narrowly cabined list of enumerated sources; and (c) removed the broad term "records" and replaced it with "scan." The Senate unanimously concurred in these changes. RJN Ex. 5 (Ill. S. J., 2008 Reg. Sess. No. 167, at 60–61 (July 10, 2008)). In other words, the Illinois General Assembly consciously *declined* to regulate all possible forms of facial-recognition technology.

A floor statement by the chief sponsor of the bill confirms the legislature's narrow focus on how businesses collect and store information from biometric-facilitated financial transactions:

> This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest *fingerprint scan system* in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market wondering what will become of their biometric and financial data. The California Bankruptcy Court recently approved the sale of their Pay By Touch database. So, we are in very serious need of protections for the citizens of Illinois when it comes to biometric information.

RJN Ex. 1 (IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008)) (emphasis added).

In sum, the complaint rests on an erroneous construction of the BIPA that is barred by the plain language of the statute and cannot be squared with either the General Assembly's express findings or the statute's legislative history. Because plaintiff cannot cure these defects, the Court should dismiss his complaint with prejudice. *See, e.g., Gadda v. State Bar of Cal.*, 511 F.3d 933,

939 (9th Cir. 2007).

## CONCLUSION

The complaint should be dismissed with prejudice.

Dated: March 10, 2016

Respectfully Submitted,

By: */s/ John Nadolenco*
John Nadolenco
Lauren R. Goldman
Archis A. Parasharami

*Counsel for Defendant Facebook, Inc.*