MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Archis A. Parasharami (*pro hac vice*)
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FREDERICK WILLIAM GULLEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.: 3:16-CV-00937-JD<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(1) AND RULE 12(h)(3) FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 14, 2016<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br>[*Proposed Order filed concurrently herewith*] |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF THE ISSUE TO BE DECIDED ....................................................................... 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 3

I. UNDER SPOKEO, PLAINTIFF'S ALLEGATIONS OF BARE STATUTORY VIOLATIONS ARE INSUFFICIENT TO ESTABLISH STANDING. ........................... 3

II. PLAINTIFF HAS NOT ALLEGED INTANGIBLE HARM. ............................................ 5

    A. A BIPA Violation Does Not Resemble A Claim Historically Recognized At Common Law ....................................................................................................... 7

    B. There Is No Evidence That The Illinois General Assembly Made A Determination That A BIPA Violation Always Constitutes Concrete Injury. ...................................................................................................................... 10

CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
 508 U.S. 520 (1993) ..................................................................................................................4

*Douglas v. Cunningham*,
 294 U.S. 207 (1935) ................................................................................................................11

*Doe v. Chao*,
 540 U.S. 614 (2004) ................................................................................................................11

*Dwyer v. Am. Exp. Co.*,
 273 Ill.App.3d 742 (1995) ........................................................................................................9

*Edwards v. First Am. Corp.*,
 610 F.3d 514 (9th Cir. 2010) ....................................................................................................3

*Gubala v. Time Warner Cable, Inc.*,
 2016 WL 3390415 (E.D. Wis. June 17, 2016).........................................................................6

*In re Facebook Internet Tracking Litig.*,
 140 F. Supp. 3d 922 (N.D. Cal. 2015) .....................................................................................9

*In re Google, Inc. Privacy Policy Litig.*,
 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .........................................................................10

*In re iPhone Application Litig.*,
 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................................................9

*In re Zappos.com*,
 108 F. Supp. 3d 949 (D. Nev. 2015) ........................................................................................9

*Khan v. Children's Nat'l Health Sys.*,
 2016 WL 2946165 (D. Md. May 19, 2016) .......................................................................7, 10

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ..................................................................................................................3

*LaCourt v. Specific Media, Inc.*,
 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .........................................................................9

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
 126 Ill.2d 411 (1989) ................................................................................................................8

*Low v. LinkedIn Corp.*,
 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................................................9

*Machlan v. Procter & Gamble Co.*,
 77 F. Supp. 3d 954 (N.D. Cal. 2015) .......................................................................................3

*Maglio v. Advocate Health & Hosps. Corp.*,
   40 N.E.3d 746 (Ill. Ct. App. 2015) ...................................................................................10

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ............................................................................................................4

*Sandoval v. Pharmacare US, Inc.*,
   No. 15-cv-738 (S.D. Cal. June 10, 2016) ...........................................................................7

*Smith v. Ohio State Univ.*,
   2016 WL 3182675 (S.D. Ohio June 8, 2016) .....................................................................6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................ *passim*

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ............................................................................................................7

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000) .........................................................................................................7, 8

**Statutes and Rules**

15 U.S.C. § 1681(a)(4) .............................................................................................................11

740 ILCS 14/15(a) ..............................................................................................................1, 2, 4

740 ILCS 14/15(b) ..............................................................................................................1, 2, 5

740 ILCS 14/20 ......................................................................................................................2, 11

Fed. R. Civ. P. 12(b)(1) ..............................................................................................................1

Fed. R. Civ. P. 12(h)(3) ..............................................................................................................1

**Other Authorities**

Restatement (Second) of Torts § 652A ......................................................................................8

Restatement (Second) of Torts § 652B ......................................................................................8

Restatement (Second) of Torts § 652C ......................................................................................9

Restatement (Second) of Torts § 652D ......................................................................................9

Restatement (Second) of Torts § 652E ......................................................................................9

William L. Prosser, *Privacy*,
   48 Cal. L. Rev. 383 (1960) .................................................................................................8

Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*,
   4 Harv. L. Rev. 193 (1890) .................................................................................................8

**NOTICE OF MOTION & MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on September 14, 2016, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. ("Facebook") will and hereby does move under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for an order dismissing the amended complaint (Dkt. No. 1-1) for lack of subject matter jurisdiction. Under the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), plaintiff lacks standing to sue. *Spokeo* has changed the law, overturning the Ninth Circuit's prior rule that a plaintiff who alleges a bare statutory violation that relates to him or her in some way has satisfied the injury-in-fact requirement for Article III standing. The Supreme Court held in *Spokeo* that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. Because plaintiff has not alleged that he has suffered a concrete injury, he lacks Article III standing to sue, and may not proceed with his claims in this Court.

Facebook's motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, any reply memorandum that Facebook may file, the pleadings, papers and other documents on file in this action, and such other evidence and argument presented to the Court at or prior to the hearing in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In *Spokeo, Inc. v. Robins*, the Supreme Court held that a plaintiff must allege "concrete" harm—which the Court described as harm that is "real" and "not abstract"—to establish Article III standing. 136 S. Ct. 1540, 1548 (2016). Reversing the Ninth Circuit's "statutory violation automatically establishes standing" rule, the Court held that the allegation of a statutory violation does not by itself suffice to meet the "real" harm standard: "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

Before *Spokeo* was decided, Facebook removed plaintiff's amended complaint to this Court under the Class Action Fairness Act. In light of *Spokeo*, however, this court lacks subject matter jurisdiction over plaintiff's claims: Plaintiff alleges merely bare violations of the Illinois Biometric Information Privacy Act (BIPA). Specifically, he alleges that Facebook failed to follow two of the BIPA's procedural requirements: (i) to develop and publish a written policy governing the retention and destruction of biometric identifiers and biometric information (740 ILCS 14/15(a)); and (ii) to notify individuals of Facebook's purported collection of biometric identifiers or information and obtain those individuals' informed written consent (740 ILCS 14/15(b)). Compl. (Dkt. No. 1-1) ¶¶ 40-49. Plaintiff does *not* allege that he suffered any "concrete injury" (*Spokeo*, 136 S. Ct. at 1549) as a result of these claimed statutory violations. Under *Spokeo*, that failure means that this Court lacks subject matter jurisdiction over plaintiff's claims.

### STATEMENT OF THE ISSUE TO BE DECIDED

Whether plaintiff has Article III standing to pursue his claims for alleged violations of the BIPA.

### BACKGROUND

Facebook makes sharing photos more personal and social by allowing people to "tag" their friends in photos. In 2010, Facebook launched a feature called "Tag Suggestions" as an alternative to manual tagging. Compl. ¶ 22 (describing this feature without naming it). Plaintiff alleges that Facebook uses facial recognition technology to analyze photos that are uploaded to

its service by people with registered accounts, and then uses the information derived from the photos to make suggestions about which Facebook friends to tag. *Id.* ¶¶ 5, 20-22, 28. That information is then saved as a "template." *Id.* ¶¶ 5, 20, 22, 28. As Facebook has previously noted (Dkt. No. 18, at 2-3), the complaint's description of this feature, and of tagging more generally, is inaccurate: Tag Suggestions does not apply to people without Facebook accounts. If a person who is tagged in a photo on Facebook does not have a Facebook account, Facebook does not—contrary to paragraph 22 of the complaint—save a "face template" and "corresponding name identification" in its "database." These inaccuracies in the complaint are immaterial for purposes of this motion, however, because the allegations as pleaded fail to establish that plaintiff has suffered any concrete harm.

Plaintiff alleges that by "scan[ning] . . . user-uploaded photo[s] for faces" and "extract[ing] geometric data" of individuals' faces, Facebook is collecting and retaining "biometric identifiers" within the meaning of the BIPA. *Id.* ¶¶ 20. His claims rest on allegations that Facebook has violated the statute by failing to make the requisite disclosures to, and obtain adequate releases from, these individuals. *Id.* ¶¶ 40-51. Specifically, he alleges that Facebook has violated two sections of the BIPA:

- Section 15(a), which requires private entities in possession of biometric identifiers or biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" (740 ILCS 14/15(a); Compl. ¶¶ 47); and

- Section 15(b), which requires private entities to give notice and obtain consent before obtaining a person's biometric identifier or biometric information (740 ILCS 14/15(b); Compl. ¶¶ 41, 45-46).

The complaint also asserts that Facebook's alleged conduct "violate[s] the statutory privacy rights of Illinois residents." *Id.* ¶¶ 6, 15; *see also id.* ¶ 48.

Plaintiff seeks statutory damages of $5,000 per allegedly intentional and reckless violation (*see* 740 ILCS 14/20(2)) or (alternatively) statutory damages of $1,000 per allegedly negligent violation (*see* 740 ILCS 14/20(1)); plus declaratory and injunctive relief, litigation expenses and attorneys' fees, and interest. *See* Compl. at 13 (Prayer for Relief).

## ARGUMENT

In order to satisfy the "irreducible constitutional minimum" of Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff "bears the burden of establishing these elements," and "[w]here, as here, a case is at the pleading stage, the plaintiff must *clearly* allege facts demonstrating each element." *Id.* (emphasis added) (quotation marks and ellipsis omitted); *see also Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 959 (N.D. Cal. 2015) ("[A]t the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of specific facts plausibly explaining why the standing requirements are met.") (quotation marks omitted). Plaintiff has failed to establish the first element: injury in fact.

### I.   UNDER *SPOKEO*, PLAINTIFF'S ALLEGATIONS OF BARE STATUTORY VIOLATIONS ARE INSUFFICIENT TO ESTABLISH STANDING.

Until recently, the rule in the Ninth Circuit was that the allegation of a statutory violation that related to the plaintiff in some way was sufficient to establish injury in fact at the pleadings stage. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), *cert. granted sub nom. First Am. Fin. Corp. v. Edwards*, 564 U.S. 1018 (2011), *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) (*per curiam*). But in *Spokeo*, the Supreme Court rejected that rule.

Spokeo is a web-based search engine that retrieves publicly available information about individuals. The plaintiff in *Spokeo* brought a putative class action under the Fair Credit Reporting Act (FCRA), alleging that some of the information that Spokeo had disseminated

about him was inaccurate. *Spokeo*, 136 S. Ct. at 1544. The Ninth Circuit held that the plaintiff had standing to sue under *Edwards* because the plaintiff's allegation that Spokeo disseminated inaccurate information about him constituted a claim that "Spokeo violated *his* statutory rights [under FCRA], not just the statutory rights of other people," and that nothing more was required. *Id.* at 1546 (quotation marks omitted).

The Supreme Court reversed, explaining that the court of appeals had erred by focusing exclusively on whether the injury was "particularized" and ignoring the "concreteness" requirement of injury in fact. To satisfy this requirement, the plaintiff must demonstrate that the injury "*actually exist[s]*" and that it is "'real,' and not 'abstract.'" *Id.* at 1548 (emphasis added). "[T]angible injuries"—such as physical harm, or the loss of money or property—of course qualify as "concrete." *Id.* at 1549. And, the Supreme Court pointed out, prior decisions of the Court identified particular types of *intangible* injuries that are concrete—such as depriving someone of the ability to engage in free speech or the free exercise of religion. *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (free exercise)).

The Court then went on to explain that an alleged statutory violation that affects the plaintiff, standing alone, is *not* sufficient to qualify as a concrete harm. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* thus holds that a plaintiff has standing to bring a statutory claim only when the asserted violation encompasses an allegation of concrete harm—either because (1) an element of the cause of action requires proof of such a harm, and the plaintiff alleges facts sufficient to establish that element (*see id.* at 1549-50); or (2) the plaintiff separately alleges facts establishing a concrete harm (*see id.* at 1549). Plaintiff satisfies neither of these requirements.

Neither of the statutory provisions invoked by plaintiff in the complaint requires proof of concrete harm to establish a violation:

4
FACEBOOK, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION;
CASE NO. 3:16-CV-00937-JD

***Section 15(a).*** Section 15(a) of BIPA requires the development and publication of a written policy governing the retention and destruction of biometric identifiers or biometric information (740 ILCS 14/15(a)); it does not require any proof of injury to establish a violation. Plaintiff agrees: he alleges that Section 15(a) was violated because "Facebook does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff or the Class Members, as required by the BIPA." Compl. ¶ 47. Plaintiff does not allege that Facebook's purported failure to adopt a written policy with the precise details required under the BIPA has affected him in *any* way—much less that it caused him to suffer a "real harm." *Spokeo*, 136 S. Ct. at 1549.

***Section 15(b).*** Concrete harm similarly is not an element of the notice-and-consent provision of BIPA, Section 15(b): that section requires a private entity that obtains a person's biometric identifier or biometric information to inform the person in writing that the data is being collected or stored; disclose the purpose and length of time of the collection, storage, and use; and obtain a written release. 740 ILCS 14/15(b). After marching through these statutory elements, plaintiff alleges only that the statute was violated because Facebook failed to "properly inform Plaintiff . . . in writing that [his] biometric identifiers were being collected and stored" and to "obtain[] the written release required by 740 ILCS 14/15(b)(3)" before doing so. Compl. ¶¶ 45-46. He does not suggest that this provision requires proof of concrete harm; nor does he allege any such harm.

Plaintiff's bare allegations of BIPA violations are insufficient to support standing, because the statutory provisions do not require proof of concrete harm. Accordingly, Article III would be satisfied only if the other allegations in the complaint were sufficient to establish that plaintiff has suffered a concrete harm. *Spokeo*, 136 S. Ct. at 1549; p. 4, *supra*. As we next discuss, they are not.

## II.   PLAINTIFF HAS NOT ALLEGED INTANGIBLE HARM.

The complaint contains a few allegations that Facebook's conduct violates "statutory privacy rights" possessed by plaintiff. Compl. ¶¶ 6, 15; *see also id.* ¶ 48. Plaintiff alleges

(incorrectly) that the Tag Suggestions feature collects and stores information about his face from user-uploaded photographs. But plaintiff has offered no specific or coherent allegations explaining how this collection and storage actually affects his privacy—much less causes him concrete harm. He has not alleged, for example, that as a direct result of Tag Suggestions, he was identified in an embarrassing photo and therefore fired from his job; that he was a victim of identity theft; or that he was caught in a compromising situation that adversely—and concretely—affected his relationships. Plaintiff cannot avoid *Spokeo*'s requirement of "real" and "not abstract" harm simply by substituting the phrase "violation of privacy rights" for "violation of statutory rights." The Court should hold that a BIPA violation does not cause an intangible injury to "privacy rights" that, standing alone, is sufficient to qualify as a concrete harm. *See Spokeo*, 136 S. Ct. at 1549.[1]

In *Spokeo*, the Court observed that in determining whether an intangible injury that gives rise to a statutory claim "constitutes injury in fact, both history and the judgment of Congress play important roles," and went on to describe these two inquiries. 136 S. Ct. at 1549. *First*, "[b]ecause the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id. Second*, "because

---

[1] Federal district courts are already applying *Spokeo* to hold that similar allegations do not establish standing. In one case, the court dismissed for lack of standing a complaint alleging that the defendant "collected personal information" from consumers and failed to destroy it in violation of the Cable Communications Policy Act. *Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415, at *1 (E.D. Wis. June 17, 2016). The plaintiff alleged that "consumers value their personally identifiable information—and the privacy of that information—very highly." *Id.* at *4. That did not suffice, the court explained, because the allegations "do[] not demonstrate that the plaintiff has suffered a concrete injury." *Id.* Indeed, the allegations suffered from several fatal flaws, all of which are equally present here: the plaintiff "d[id] not allege that the defendant has disclosed his information to a third party," and "[e]ven if he had alleged such a disclosure, he d[id] not allege that the disclosure caused him any harm." *Id.* Nor did the plaintiff "allege that he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft." *Id.* In light of these deficiencies, the court dismissed the plaintiff's claim under "the clear directive in *Spokeo*." *Id.* at *5; *see also Smith v. Ohio State Univ.*, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (allegations that the plaintiffs "suffered harm when their 'privacy was invaded and they were misled as to their rights under the FCRA'" failed to establish standing, because the plaintiffs "did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA").

Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* The ultimate question, of course, is one to be "determin[ed]" by the court. *Id.* Here, neither of these factors supports a finding of standing.[2]

### A. A BIPA Violation Does Not Resemble A Claim Historically Recognized At Common Law.

Privacy concerns based on the collection and storage of information from uploaded photographs do not bear "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. That is because "the doctrine of standing derives from the case-or-controversy requirement" and "that requirement in turn is grounded in historical practice" at the time the Constitution was adopted. *Id.* In discussing the importance of "historical practice" (*id.*), the Court in *Spokeo* cited its opinion in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774-77 (2000), which examined "the long tradition of *qui tam* actions in England and the American Colonies," including "in the period *immediately before and after the framing of the Constitution*" (emphasis added). *See also id.* at 774 ("[T]he Constitution established that 'judicial power could come into play only in matters that were the traditional concern of the

---

[2]  *Spokeo* involved a federal statute, but the Court's reasoning necessarily applies to cases involving state statutes. One federal district court has already reached that conclusion, applying *Spokeo* to hold that the plaintiff lacked Article III standing in a data breach case alleging state statutory and common-law violations. *Khan v. Children's Nat'l Health Sys.*, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (noting that the plaintiff had "advance[d] no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant who has not suffered a concrete injury"); *see also* Order Denying Motion For Class Certification, at 14, *Sandoval v. Pharmacare US, Inc.*, No. 15-cv-738 (S.D. Cal. June 10, 2016), Dkt. No. 56 (applying *Spokeo* in holding that plaintiffs could not certify a class for alleged violations of both federal and state statutes as well as common-law claims in connection with the marketing and labeling of the defendant's product, in part because "the class includes consumers who have no cognizable injury, including those who obtained full refunds") (citing *Spokeo*, 136 S. Ct. at 1549).

Certainly a state legislature's authority to confer standing could not be *greater* than Congress's. As the Ninth Circuit held in a case brought under a California statute, "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury" required by Article III. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001).

courts at Westminster . . . .") (alterations omitted); *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274-75 (2008) ("[I]n crafting Article III, the framers gave merely the outlines of what were to them the familiar operations of the English judicial system and its manifestations on this side of the ocean *before the Union*.") (emphasis added; alterations and quotation marks omitted). Thus, the reference to "historical practice" in *Spokeo* refers to the types of harms that *at the time of the founding* would have been recognized as forming the basis of a lawsuit.

In contrast to the *qui tam* actions at issue in *Vermont Agency*, a claim based on privacy concerns would have been unrecognizable to the Framers of the Constitution or even throughout most of the nineteenth century, because "[p]rior to 1890 no English or American court had ever expressly recognized the existence of the right [to privacy]." Restatement (Second) of Torts § 652A cmt. a. Rather, common-law privacy claims have their origins in a law review article published in 1890—over a century after the founding. *See id.* (citing Samuel D. Warren and Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)).

Nor does plaintiff's cause of action resemble any of the dignitary and emotional privacy harms first recognized in the nineteenth century, which fit into four carefully delineated categories: (1) "unreasonable intrusion upon the seclusion of another"; (2) "appropriation of the other's name or likeness"; (3) "unreasonable publicity given to the other's private life"; and (4) "publicity that unreasonably places the other in a false light before the public." Restatement (Second) of Torts § 652A; *accord* William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389 (1960) (articulating same four categories). Plaintiff's BIPA claim does not bear a "close relationship" to any of these torts, each of which requires a showing of far more serious and concrete injury than plaintiff has alleged here.

Plaintiff has not alleged, for example, that Facebook has engaged in the kinds of "highly offensive" prying that are required for an intrusion upon seclusion claim—such as "physical intrusion" into a plaintiff's home or hotel room; peering into the plaintiff's windows or tapping his phones; "searching his safe or his wallet"; or "examining his private bank account." Restatement (Second) of Torts § 652B & cmts. b, d; *accord Lovgren v. Citizens First Nat'l Bank*

*of Princeton*, 126 Ill.2d 411, 416-17 (1989). A claim of appropriation of name or likeness requires a showing that the defendant misappropriated the "*value*" of the plaintiff's identity. Restatement (Second) of Torts § 652C cmt. c (emphasis added); *accord Dwyer v. Am. Exp. Co.*, 273 Ill.App.3d 742, 749 (1995). Plaintiff has alleged no such thing. Nor has Plaintiff alleged that Facebook has disclosed information about him to the public, an indispensable element of an unreasonable publicity claim and a false light claim. Restatement (Second) Torts §§ 652D & cmt. a, 652E & cmt. a.

Plaintiff could not bring a common-law privacy claim in the twentieth or twenty-first centuries either: modern precedents confirm that privacy concerns of the kind plaintiff alleges here fall far short of satisfying Article III standing. Courts in this Circuit have routinely dismissed, for lack of standing, common-law claims based upon privacy concerns about the alleged collection of personal information. The courts have imposed two prerequisites for a finding of standing in such cases. First, the plaintiff must offer specific allegations showing that sensitive information was disclosed to or stolen by *third parties*.[3] Plaintiff, of course, makes no such allegation here. Second, even where that requirement is met, the courts have demanded specific allegations of actual *harm* arising from those disclosures.[4] Plaintiff clearly has not satisfied this requirement either.

---

[3] *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 929-32 (N.D. Cal. 2015) (no standing for "data privacy" claims that Facebook collected and tracked plaintiffs' Internet browsing histories without their consent); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *1, *6 (N.D. Cal. Nov. 11, 2011) (same for allegations that LinkedIn tracked its "users' personally identifiable browsing history and other personal information" and transmitted that information to third party advertisers through the use of "cookies" or "beacons"; the plaintiff had not "alleged that his sensitive personal information has been exposed to the public" and "failed to put forth a coherent theory of how his personal information was disclosed or transferred to third parties, and how it has harmed him"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *1, 4-6 (N.D. Cal. Sept. 20, 2011) (same for allegations that "Defendants violated [plaintiffs'] privacy rights by unlawfully allowing third party applications" on their iPhones and iPads "to collect and make use of, for commercial purposes, personal information without user consent or knowledge"; plaintiffs "d[id] not identify what harm (if any) resulted from the access or tracking of their personal information" or "articulate[] a coherent and factually supported theory of injury" based on "the alleged collection and tracking of their personal information"); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *3-6 (C.D. Cal. Apr. 28, 2011) (same for allegations that the defendant harmed plaintiffs by using their personal information for targeted advertising).

[4] *See, e.g.*, *In re Zappos.com*, 108 F. Supp. 3d 949, 951, 962 n.5 (D. Nev. 2015) (no standing to sue for privacy violations where hackers stole the data of "24 million Zappos

In sum, the injury-in-fact requirement is "a significant barrier to entry" to common-law "data privacy claims." *In re Google, Inc. Privacy Policy Litigation*, 2013 WL 6248499, at *4 (N.D. Cal. Dec. 3, 2013). Under *Spokeo*, the same barrier now applies to claimed statutory violations—and plaintiff cannot hurdle it here.

### B. There Is No Evidence That The Illinois General Assembly Made A Determination That A BIPA Violation Always Constitutes Concrete Injury.

There is no evidence that in enacting BIPA the Illinois General Assembly determined that a violation of that statute's requirements, standing alone, should constitute an intangible but concrete injury that would "meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549.[5] The General Assembly's intent to regulate biometric technologies, and its consequent imposition of procedural requirements on entities that employ those technologies, standing alone, cannot be equated with a determination that a violation of those requirements "work[s] any concrete harm." *Id.* at 1550.[6]

Again, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement" simply because a legislature created "a statutory right and purport[ed] to authorize [a] person to sue to vindicate that right." *Id.* at 1549. Thus, as the Supreme Court explained, even though the

---

customers," including their "names, account numbers, passwords, email addresses, billing and shipping addresses, phone numbers, and the last four digits of their credit cards"; plaintiffs failed to show that alleged loss of privacy "amount[ed] to a concrete and particularized injury"); *see also Khan*, 2016 WL 2946165, at *1, *6 (no standing to sue for privacy violations where hackers had obtained "patient information" from the defendant's hospital, "such as names, addresses, dates of birth, Social Security numbers, and telephone numbers, as well as private health care information"; the plaintiff "argu[ed] that the data breach has caused a loss of privacy that constitutes an injury in fact," but "ha[d] not identified any potential damages arising from such a loss and thus fail[ed] to allege a concrete and particularized injury") (quotation marks omitted).

[5] Because BIPA does not embody the requisite legislative determination, there is no occasion for this Court to determine whether a state legislature is entitled to the same deference as Congress with respect to identifying intangible injuries that may be sufficient to institute an action in federal court.

[6] Illinois follows federal principles of standing. Under Illinois law, like under Article III, "[s]tanding requires some injury in fact to a legally cognizable interest." *Maglio v. Advocate Health & Hosps. Corp.*, 40 N.E.3d 746, 752-53 (Ill. Ct. App. 2015) (citing *Greer v. Ill. Hous. Dev. Auth.*, 122 Ill.2d 462, 492-93 (1988)). "Federal standing principles are similar to those in Illinois, and the case law is instructive." *Id.* at 753. Accordingly, the Illinois General Assembly was legislating against the backdrop of the injury-in-fact requirement, and if it had intended to make a determination that any violation of the BIPA's requirements automatically causes concrete harm, it would have said so expressly.

FCRA's procedural requirements are designed "to curb the dissemination of false information"—a legislative policy interest just as strong as the protection of biometric information—"[a] violation of one of the FCRA's procedural requirements may result in no [concrete] harm" and thus no standing. *Id.* at 1550.  That is so even though Congress expressly found in enacting FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  This Court's conclusion that BIPA has a "broad purpose of protecting privacy in the face of emerging biometric technology" similarly does not advance plaintiff's standing.  *In re Facebook Biometric Information Privacy Litig.* Dkt. No. 120, at 22.[7]

Nothing in the text or history of BIPA suggests an intent to open the courthouse doors to individuals who have not suffered any real harm.  The existence of a private right of action (also present in the FCRA) cannot be enough to demonstrate such an intent: if it were, that would completely eviscerate the Supreme Court's holding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*, 136 S. Ct. at 1549.

Nor does the fact that the Illinois General Assembly authorized statutory damages (740 ILCS 14/20) mean that the legislature intended to eliminate or relax the concrete-injury requirement.  The availability of statutory damages does not serve as a substitute for proof of *injury*; the provision simply relieves plaintiffs of the problem of quantifying *damages*.  *See Doe v. Chao*, 540 U.S. 614, 625 (2004) (statutory damages serve "as a form of presumed damages not requiring proof of amount"); *see also, e.g.*, *Douglas v. Cunningham*, 294 U.S. 207, 209 (1935). No member of the *Spokeo* Court suggested that the availability of statutory damages under the FCRA, without more, satisfies Article III.  The same is necessarily true of the availability of statutory damages under BIPA.

---

[7] Facebook respectfully disagrees with that view of the statute for the reasons explained in its prior briefing (*see* Dkt. No. 18, at 10-12; Dkt. No. 24, at 8-10).

**CONCLUSION**

This Court lacks subject matter jurisdiction over the amended complaint.

Dated: June 30, 2016                    MAYER BROWN LLP

                                        By: */s/ John Nadolenco*
                                            John Nadolenco
                                            Lauren R. Goldman
                                            Archis A. Parasharami

                                        *Counsel for Defendant Facebook, Inc.*