Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Paul J. Geller (Admitted *pro hac vice*)
pgeller@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Tel: 561.750.3000
Fax: 561.750.3364

Shawn A. Williams (213113)
shawnw@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545
Fax: 415.288.4534

Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

*Counsel for In re Facebook Biometric Info. Plaintiffs and the Putative Class*

Frank S. Hedin (291289)
fhedin@careyrodriguez.com
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel: 305.372.7474
Fax: 305.372.7475

*Counsel for Plaintiff Frederick Gullen and the Putative Class of Non-Users*

[Additional counsel appear on the signature page.]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Facebook Biometric Information Privacy Litigation*<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br>--<br>Frederick William Gullen, individually and behalf of all others similarly situated,<br>　　*Plaintiff,*<br><br>　　　　v.<br><br>Facebook, Inc.,<br>　　*Defendant.* | Master Docket No. 3:15-cv-3747-JD<br>No. 3:16-cv-00937-JD<br><br>**PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO FACEBOOK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date: September 14, 2016<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.   Plaintiffs Have Article III Standing Because Facebook Invaded Their Property
     Interest in Their Faceprints ..................................................................... 2

II.  Plaintiffs Have Suffered an Intangible Injury .......................................... 3

     A.   Spokeo confirmed that legislatures can identify intangible concrete harms
          redressable in federal court ............................................................. 4

     B.   Plaintiffs' informational injury is sufficient to confer standing ....... 5

     C.   The common law and the legislature's judgment confirm that both
          Facebook's failure to make the required disclosures and its failure to obtain
          consent before collecting biometric data are concrete injuries ......... 8

          1.   BIPA bears a close relationship to traditional common law actions
               involving the  right of publicity and right to privacy ................ 8

          2.   The Illinois Legislature exercised its judgment to protect an
               individual's interest in the privacy of their biometric data ........ 10

III. If There Is a Question about Federal Jurisdiction, Licata's Case Must Be
     Severed and Remanded to Illinois State Court And Gullen's Case Must Be
     Remanded To California State Court ........................................................ 13

CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abdul-Jabbar v. Gen. Motors Corp*,
　85 F.3d 407 (9th Cir. 1996) ...............................................................9

*Albingia Versicherungs A.G. v. Schenker Int'l Inc.*,
　344 F.3d 931 (9th Cir. 2003) ...........................................................13

*Bell v. City of Kellogg*,
　922 F.2d 1418 (9th Cir. 1991) .....................................................14, 15

*Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF,
　2014 WL 5598222 (N.D. Cal. Nov. 3, 2014) .......................................2

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14 Civ. 00751(GPC)(DHB),
　2016 WL 3543699 (S.D. Cal. June 29, 2016).......................................12

*Canessa v. J.I. Kislak, Inc.*,
　235 A.2d 62 (N.J. Super. Ct. Law Div. 1967) ......................................3

*Cantrell v. City of Long Beach*,
　241 F.3d 674 (9th Cir. 2001) .........................................................5, 12

*Carpenter v. United States*,
　484 U.S. 19 (1987)...............................................................................2

*Church v. Accretive Health, Inc.*, — F. App'x —,
　No. 15-15708, 2016 WL 3611543  (11th Cir. July 6, 2016)....................4

*Covey Gas & Oil Co. v. Checketts*,
　187 F.2d 561 (9th Cir. 1951) ...............................................................8

*Dred Scott v. Sandford*,
　60 U.S. (19 How.) 393 (1856) ..............................................................9

*Dutton v. Rice*,
　53 N.H. 496 (1873) ...............................................................................9

*Edwards v. First Am. Corp.*,
　610 F.3d 514 (9th Cir. 2010) ...............................................................1

*Eick v. Perk Dog Food Co.*,
　106 N.E.2d 742 (Ill. App. Ct. 1952) .....................................................9

*Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW,
　2008 WL 8820476 (N.D. Cal. June 25, 2008) ......................................2

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998)..................................................................................5, 6, 7

*Flores-Miramontes v. INS*,
    212 F.3d 1133 (9th Cir. 2000) ...................................................................9

*FMC Corp. v. Boesky*,
    852 F.2d 981 (7th Cir. 1988) ...................................................................12

*Friends of Animals v. Jewell*, — F.3d —,
    No. 15-5223, 2016 WL 3854010 (D.C. Cir. July 15, 2016) ...........................5, 8

*Greer v. Illinois Hous. Dev. Auth.*,
    524 N.E.2d 561 (Ill. 1988) .......................................................................14

*Hajro v. USCIS*,
    811 F.3d 1086 (9th Cir. 2015) ...................................................................7

*Hardin v. Jordan*,
    140 U.S. 371 (1891)..................................................................................10

*Hancock v. Urban Outfitters, Inc.*, — F.3d —,
    No. 14-7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016) .........................4

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..................................................................................6

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) ...................................................................13

*In re Marriage of Rodriguez*,
    545 N.E.2d 731 (Ill. 1989).........................................................................14

*In re Nickelodeon Consumer Privacy Litig.*, — F.3d —,
    No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016) ...........................4, 12

*Jasmine Networks, Inc. v. Superior Court*,
    103 Cal. Rptr. 3d 426 (Ct. App. 2009)........................................................15

*Kyllo v. United States*,
    533 U.S. 27 (2001)....................................................................................9

*Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446,
    2016 WL 3671467 (N.D. Ill. July 11, 2016).................................................7

*Langford v. Gates*,
    610 F. Supp. 120 (C.D. Cal. 1985) .............................................................13

*Lawrence v. Texas,*
   539 U.S. 558 (2003)........................................................................................3

*Lebron v. Gottlieb Mem'l Hosp.,*
   930 N.E.2d 895 (Ill. 2010) ...........................................................................14

*Leopold v. Levin,*
   259 N.E.2d 250 (Ill. 1970) ...........................................................................10

*Lewis v. Verizon Commc'ns, Inc.,*
   627 F.3d 395 (9th Cir. 2010) .......................................................................13

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).............................................................................5, 10, 11

*Maglio v. Advocate Health & Hosps. Corp.,*
   40 N.E.3d 746 (Ill. App. Ct. 2015) ..............................................................14

*Mazer v. Stein,*
   347 U.S. 201 (1954)........................................................................................9

*McCollough v. Smarte Carte, Inc.,* No. 16 C 03777,
   2016 WL 4077108, (N.D. Ill. Aug. 1, 2016) ..............................................12

*Nashville, C. & St. L. Ry. Co. v. Wallace,*
   288 U.S. 249 (1933).......................................................................................9

*People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van,*
   685 N.E.2d 1370 (Ill. 1997) .........................................................................14

*People ex rel. Ferrill v. Graydon,*
   164 N.E. 832 (Ill. 1928)...............................................................................10

*Planned Parenthood of Southeastern Pa. v. Casey,*
   505 U.S. 833 (1992)........................................................................................3

*Public Citizen v. Dep't of Justice,*
   491 U.S. 440 (1989)........................................................................................6

*Rottner v. Palm Beach Tan, Inc.,*
   No. 15-cv-16695 (Cir. Ct. Cook County July 12, 2016)...............................15

*Spokeo Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ........................................................................*passim*

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998).....................................................................................8, 9

*Thomas v. FTS USA, LLC*, No. 3:13-CV-825,
    2016 WL 3653878 (E.D. Va. June 30, 2016) .................................................7, 10

*United States v. Kriesel*,
    720 F.3d 1137 (9th Cir. 2013) .................................................3

*Villanueva v. 3M Co.*, No. CV160183DMGRAOX,
    2016 WL 837896 (C.D. Cal. Mar. 3, 2016).................................................14

*Wilderness Soc'y, Inc. v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) .................................................8

**Statutory Authority**

28 U.S.C. § 1447(c) .................................................13, 14

740 ILCS 14 ................................................. *passim*

765 ILCS 1075 .................................................3

**Constitutional Provisions**

U.S. Const. art. III, § 2 ................................................. *passim*

**INTRODUCTION**

In these actions, Plaintiffs seek redress for Facebook's unlawful collection and retention of their biometric data in violation of the Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. Having failed in its bid to deny Illinois consumers the protection of their state's biometric privacy regime based on a choice of law clause in a contract of adhesion, Facebook now tries a different tactic to usurp those same rights and negate the fundamental public policy of the state. This time, Facebook argues that Article III of the United States Constitution prohibits the Court from hearing this case, and seeks dismissal of all of the cases in the above-captioned actions, including the cases that it removed from state court.[1] Stated plainly, Facebook misreads the Supreme Court's recent opinion in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016), to hold that the Plaintiffs here lack sufficient injury to proceed in federal court.

Plaintiffs possess Article III standing, and federal jurisdiction exists here for two independent reasons. First, the invasion of their property right in the information that makes up their own faces is a tangible injury that confers standing. Second, the informational injury Plaintiffs suffered when Facebook failed to make statutorily required disclosures is grounded in their right to privacy and to control the use of their own likeness, and is therefore also a concrete, if intangible, injury.

Finally, with respect to Plaintiffs Licata and Gullen—whose cases were removed to federal court by Facebook—a lack of standing could result only in remand, not dismissal. But even remand is not required because, as explained in detail below, Plaintiffs have standing and there is no question that this Court has jurisdiction.

**ARGUMENT**

Article III of the Constitution extends the judicial power of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2, and requires the litigant invoking the federal courts' jurisdiction to have "standing," the first element of which being that the litigant has suffered an "injury in fact." *Edwards v. First Am. Corp.*, 610 F.3d 514, 516 (9th Cir. 2010). In *Spokeo*, the

---

[1]   *See* Facebook's Notice of Removal, *Licata v. Facebook, Inc.*, No. 1:15-CV-04022, Dkt.  1 (N.D. Ill. May 6, 2015); Facebook's Notice of Removal, *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937, Dkt. 1 (N.D. Cal. Feb. 25, 2016).

Supreme Court reiterated the long-standing rule that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Court also re-affirmed that both tangible and intangible harms can be sufficient to confer standing. *Id.* at 1549. Here, the harms alleged in the Consolidated Complaint filed in Master Docket No. 3:15-cv-3747-JD, and the operative complaint filed in No. 3:16-cv-00937-JD, consist of both tangible harms, as well as intangible harms, that fit directly within well-established standing principles.

## I.    Plaintiffs Have Article III Standing Because Facebook Invaded Their Property Interest in Their Faceprints.

It is not disputed that tangible injuries, "such as … the loss of money or property" are concrete for the purposes of Article III. (Dkt. 129 at 4) (*citing Spokeo*, 136 S. Ct. at 1549). Information is frequently considered proprietary in nature. *See Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."); *see also Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 8820476, at *1 (N.D. Cal. June 25, 2008) ("In essence, Facebook alleges that ConnectU gained unauthorized access to Facebook's servers and website and took information for its own unlawful use."); *Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2014 WL 5598222, at *4 (N.D. Cal. Nov. 3, 2014) (granting Facebook's motion to seal on the grounds that "information in these documents, if disclosed, could both provide Facebook's competitors with valuable proprietary information and prevent Facebook from effectively enforcing its policies"). In a similar vein, the Illinois legislature has already recognized that an individual has a property interest in his or her identity. The Illinois Right of Publicity Act ("IRPA") recognizes that Illinois citizens have a "right to control and to choose whether and how to use an individual's identity for commercial purposes," and confirms that this right is a "property right[]." 765 ILCS 1075/10, 15. Having such information taken without permission is an Article III injury in fact.

In BIPA, the Illinois Legislature has recognized that biometric data is different from other identifiers in that it is "biologically unique to the individual" and cannot be changed. 740 ILCS

14/5(c). Just as trade secrets or subscriber lists can be proprietary to a company like Facebook, unique and unchangeable biometric identifiers are proprietary to individuals like Plaintiffs. Indeed, it is difficult to imagine something that an individual has greater interest in than her own body and the unique biometric data it contains. *See United States v. Kriesel*, 720 F.3d 1137, 1144–45 (9th Cir. 2013) ("The Rule's definition of property includes 'documents, books, papers, any other tangible objects, and information.' Fed. R. Crim. P. 41(a)(2)(A). The district court also properly concluded that . . . the genetic code contained within the blood sample is information."); *see also Lawrence v. Texas*, 539 U.S. 558, 574 (2003); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992).

In passing BIPA, the Illinois legislature set out the "fundamental policy of the state of Illinois" that citizens have a right to control how their own biometric identifiers are collected, stored, and used. (Order Re Motion to Dismiss and Summary Judgment, Dkt. 120 at 17-18). Facebook invaded this right by collecting Plaintiffs' biometric data without their consent, and without providing disclosures required by the statute. And because biometric identifiers are property, Facebook's statutory violations are an invasion of Plaintiffs' property rights. *See*, *e.g.*, *Canessa v. J.I. Kislak, Inc.*, 235 A.2d 62, 76 (N.J. Super. Ct. Law Div. 1967) (holding that individuals' likenesses "belong to them[;] [a]s such they are property," and that plaintiffs' claims for misappropriation of likeness was therefore "an action for invasion of their 'property' rights"). For that reason alone, Plaintiffs have alleged an Article III injury in fact.

## II.     Plaintiffs Have Suffered an Intangible Injury.

Independently from the tangible injury to their property rights, Plaintiffs have also suffered two distinct types of intangible injuries: the informational injury caused by Facebook's failure to make the disclosures required by 740 ILCS 14/15(a), (b)(1), and (b)(2), and the invasion of their privacy rights caused by Facebook's collection of their biometric identifiers without obtaining the consent required by 740 ILCS 14/15(b)(3).

Like tangible harms, these intangible harms also provide the basis for an Article III injury in fact. When a statute requires disclosure of certain information, and a defendant who is required to provide that information fails to do so, the person who was supposed to receive the

information has suffered an injury in fact.  Here, Facebook violated BIPA's disclosure mandate, as Plaintiffs did not receive the information to which they were entitled. Further, both the common law and the reasoned judgment of the Illinois legislature confirm the concrete nature of consumers' interest in controlling who is allowed to collect and store that sensitive and unique data, and in their knowledge of how that data is used.

### A.  *Spokeo* confirmed that legislatures can identify intangible concrete harms redressable in federal court.

 In the context of an injury sufficient to confer Article III standing, "[c]oncrete' is not … necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549. Thus, multiple appellate courts since *Spokeo* have noted that failure to receive statutorily required disclosures is an injury—though intangible—sufficient to support Article III standing. *Church v. Accretive Health, Inc.*, — F. App'x —, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) ("[Plaintiff] has sufficiently alleged that she has sustained a concrete—*i.e.* 'real'—injury because she did not receive the allegedly required disclosures…. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete."); *In re Nickelodeon Consumer Privacy Litig.*, — F.3d —, No. 15-1441, 2016 WL 3513782, at *7 (3d Cir. June 27, 2016) ("Intangible harms that may give rise to standing also include harms that 'may be difficult to prove or measure,' such as unlawful denial of access to information subject to disclosure.") (quoting *Spokeo*, 136 S. Ct. at 1548-49).[2]

To be sure, a plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. But Facebook's proposed test for Article III

---

[2]   *Hancock v. Urban Outfitters, Inc.*, — F.3d —, No. 14-7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016), which held that a statutory prohibition on requesting zip code information was a "bare procedural violation," is not to the contrary. The plaintiffs in that case, unlike Plaintiffs here, did not allege "any invasion of privacy" or other intangible injury, and they did not demonstrate that the D.C. City Council passed the statute at issue to remedy the kind of harm they suffered. *See id.* at *3.

1  standing in the context of a statutory violation entirely reads out the legislature's "instructive and

2  important" judgment and its "role in identifying and elevating intangible harms[.]" *Id.* According

3  to Facebook, a harm is concrete only if it is "tangible" or if it is a "particular type[]" of intangible

4  harm that a "*prior decision[] of the Court*" has recognized as being concrete. (Dkt. 129 at 10)

5  (emphasis added). Under Facebook's reading, *Spokeo* relegates legislatures to the role of

6  scrivener, their powers reduced to passing statutes that allow lawsuits for things that already

7  meet some antecedent definition of "harm."

8       This is simply incorrect. Adopting Justice Kennedy's test from *Lujan v. Defenders of*

9  *Wildlife*, the Court held that *legislatures* have "the power to define injuries and articulate chains

10  of causation that will give rise to a case or controversy where none existed before," even where

11  those injuries are intangible. *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580

12  (Kennedy, J., concurring in part and concurring in the judgment)). In other words, a legislature

13  "can create new private rights and authorize private plaintiffs to sue based simply on the

14  violation of those private rights." *Id.* at 1553 (Thomas, J., concurring); *see also Cantrell v. City*

15  *of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create interests that support

16  standing in federal courts. … State statutes constitute state law that can create such interests.").

17  Facebook's test, which would effectively freeze the universe of sufficiently concrete harms to

18  those recognized as legal claims in the 18th Century, cannot be squared with that principle, nor,

19  as explained below, can it be squared with Supreme Court jurisprudence on informational injury.

## B.    Plaintiffs' informational injury is sufficient to confer standing.

21       *Spokeo* confirms that "the existence and scope of an injury for informational standing

22  purposes is defined by Congress" (or, as here, the Illinois Legislature), and that "a plaintiff

23  seeking to demonstrate that it has informational standing generally 'need not allege any

24  *additional* harm'" to have Article III standing. *Friends of Animals v. Jewell*, — F.3d —, No. 15-

25  5223, 2016 WL 3854010, at *2 (D.C. Cir. July 15, 2016) (quoting *Spokeo*, 136 S. Ct. at 1549).

26  To that end, the *Spokeo* majority cited both *Federal Election Commission v. Akins*, 524 U.S. 11

27  (1998) for the proposition that "inability to obtain information that Congress had decided to

28  make public is a sufficient injury in fact to satisfy Article III," and *Public Citizen v. Department*

*of Justice*, 491 U.S. 440 (1989) for its "holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue.'" 136 S. Ct. at 1549-50.

Although *Akins* and *Public Citizen* relate to information from government sources, legislatures can also require private entities to disclose information. For example, in another informational injury case, *Havens Realty Corporation v. Coleman*, 455 U.S. 363, 373 (1982), the Supreme Court considered the portion of the Fair Housing Act that guarantees "a legal right to truthful information about available housing." The Court confirmed that a black "tester"—that is a person who inquired about the availability of real estate "without any intention of buying or renting a home"—had standing to sue an entity that gave her false information about the availability of housing because of her race. *Id.* at 374.

To be clear, the "real" and "actual" injury in *Havens* was the denial of information to which the plaintiff was entitled, not the underlying racial discrimination that caused her not to get that information. The Court made that much clear by its treatment of the claims of another plaintiff, a white man who had not received any false information about the availability of housing. The white plaintiff lacked standing because he "alleged no injury to his statutory right to accurate information concerning the availability of housing." *Havens*, 455 U.S. at 375. The fact that he did not "allege that he was a victim of a discriminatory misrepresentation" was relevant only in that it showed that he had "not pleaded a *cause of action*" under the statute. *Id.* (emphasis added). In other words, if he had been given false information for reasons other than his race, then he would have had standing, but he still would have lost on the merits.

Thus, for Article III purposes, the "invasion" of a "statutorily created private right" to information is a sufficient injury to allow a plaintiff to sue in federal court. *See Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring). Since *Spokeo*, courts have consistently found that plaintiffs have standing to sue defendants who deprive them "of a fully appreciable disclosure to which he or she is entitled under" a statute. *See Thomas v. FTS USA, LLC*, No. 3:13-CV-825, 2016 WL 3653878, at *9 (E.D. Va. June 30, 2016) (holding that it is "clear" that the plaintiff alleged a concrete injury under the Fair Credit Reporting Act because he "alleged that he was deprived of

a clear disclosure stating that Defendants sought to procure a consumer report before the report was obtained" without any additional or resulting harm); *see also Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016) (concluding that the plaintiff had "alleged a sufficiently concrete injury because he alleges that [the debt collector defendant] denied him the right to information due to him under" a statute").

The BIPA violations that Plaintiffs allege here are exactly the type of informational injury that courts have deemed sufficient for Article III standing purposes. Specifically, Plaintiffs pleaded that Facebook collected their biometric identifiers but failed to disclose its "written policy … establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information," 740 ILCS 14/15(a), did not tell Plaintiffs "that a biometric identifier or biometric information is being collected or stored," *id.* § 15(b)(1) and failed to inform them "of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used," *id.* § 15(b)(2). (Dkt. 40 at 13-15.) Being deprived of that information, access to which is guaranteed by statute, is an Article III injury in fact.[3]

Because Plaintiffs were entitled to information about Facebook's collection, retention, and use of their biometric identifiers and did not receive it, they have suffered a legally cognizable injury of the type that are routinely resolved in federal court. Accordingly, they have standing and the Court has jurisdiction.

---

[3]   It is worth noting that it is irrelevant that Plaintiffs did not specifically request this information before filing the lawsuit, as would be required under other types of disclosure statues, nor does the absence of such a requirement transform Plaintiffs' claims into a "generalized grievance." In some disclosure statutes, the event that triggers the defendant's obligation to disclose information is the plaintiff's request. Here, the event that triggers the obligation is the collection of biometric data (more specifically, the disclosure must be made before such data is collected). Facebook is thus liable to all Illinois residents from whom it collected biometric data without providing the proper disclosure, but it is not liable to anyone whose biometric data it did not collect. Although this injury is "widely shared," as Facebook has amassed biometric data on an extraordinary number of persons, that fact "does not, by itself, automatically disqualify [the] interest for Article III purposes." *Akins*, 524 U.S. at 24; *see also Hajro v. USCIS*, 811 F.3d 1086, 1105 (9th Cir. 2015).

**C.     The common law and the legislature's judgment confirm that both Facebook's failure to make the required disclosures and its failure to obtain consent before collecting biometric data are concrete injuries.**

In the informational injury context, some cases suggest that the information must bear a relationship to a separate concrete interest before its nondisclosure will itself be a concrete injury. *See*, *e.g.*, *Friends of Animals*, 2016 WL 3854010 at *3; *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1258-59 (9th Cir. 2010). Here, the disclosures Facebook was required (but failed) to make to Plaintiffs were directly related to their interest in controlling how their personal biometric data is collected, stored, and used. In addition to the informational injury, Facebook substantively invaded that same interest when it collected Plaintiffs' biometric data without their informed consent, in violation of 740 ILCS 14/15(b)(3). This privacy interest—recognized by the Court as fundamental Illinois policy—is certainly concrete when examined through the lens of the two "important" and "instructive" sources identified by *Spokeo*—the legislature's judgment and the common law. *See Spokeo*, 136 S. Ct. at 1549.

**1.     BIPA bears a close relationship to well-established, traditional actions involving the right of publicity and right to privacy.**

Under *Spokeo*, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. This is because federal judicial power under Article III applies to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). This is *not* a requirement that a statutorily created cause of action be absolutely identical to a common law tort. It would be bizarre, to say the least, to suggest—as Facebook does—that there is no federal jurisdiction in cases that "would have been unrecognizable to the Framers of the Constitution or … throughout the most of the nineteenth century," or to say that causes of action must always include an "indispensible element" of a traditional common law claim. (Dkt. 129 at 11-12.) Such strict adhesion to ancient precedent would deny standing in wide swaths of cases, including actions for wrongful death, *Covey Gas & Oil Co. v. Checketts*, 187 F.2d 561, 562 (9th Cir. 1951) ("Recovery for damages from death by such negligence did not exist in the common

law at the time of the adoption of the Constitution of the United States."), copyright, *Mazer v. Stein*, 347 U.S. 201, 214 (1954) ("[Copyright] did not exist at common law[.]"), breach of contract entered into with a married woman, *see Dutton v. Rice*, 53 N.H. 496, 498 (1873) (affirming dismissal of suit for plaintiff's failure to plead the indispensible element that she was unmarried at the time she entered into the contract), any case brought by a black plaintiff, *see Dred Scott v. Sandford*, 60 U.S. (19 How.) 393, 408 (1856) (determining that federal courts lacked diversity jurisdiction to hear a case brought by a black plaintiff based in part on the English common law rule that persons "of the African race [were] regarded … as an article of property" and not as citizens), and all cases involving the Constitution, *see Flores-Miramontes v. INS*, 212 F.3d 1133, 1142 (9th Cir. 2000) ("[T]he scope of review on habeas corpus could not have been restricted to claims of 'substantial constitutional' violations, because the Constitution did not exist at common law."). Simply put, "[t]he judiciary clause of the Constitution … did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 264 (1933). Rather, courts are to consider whether a case is the *type* of case that could be brought under common law. *See Steel Co.*, 523 U.S. at 102.

American courts have long recognized that allegations of invasions of privacy are a type of case that they have jurisdiction to hear. True, the common law right to privacy in controlling the use of one's own likeness does not come from the dusty annals of 18th century English jurisprudence. Rather, it is uniquely American, originating with "Samuel Warren and Louis D. Brandeis, whose famous article The Right of Privacy, 4 Harv. L.R. 193 (1890) first used the phrase 'right of privacy.'" *Eick v. Perk Dog Food Co.*, 106 N.E.2d 742, 743 (Ill. App. Ct. 1952). By the early 1950s, "the right [had been] recognized by the great preponderance of authority throughout the country," *id.* (collecting cases), *see also Abdul-Jabbar v. Gen. Motors Corp*, 85 F.3d 407, 414 (9th Cir. 1996) (recognizing California's "common law cause of action for appropriation of name or likeness"); *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001) (holding that the expectation of privacy guaranteed by the Fourth Amendment can extend to a non-physical intrusion). Illinois, specifically, has recognized the harm associated with invasions of

privacy for many years. *See Leopold v. Levin*, 259 N.E.2d 250, 253-54 (Ill. 1970) (citing *Eick*, 106 N.E.3d). Even after the decision in *Spokeo* was handed down, courts have continued to re-iterate that "[t]he common law has long recognized a right to personal privacy, and 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'" *Thomas*, 2016 WL 3653878, at *10 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (emphasis added)).

The protections afforded by BIPA are simply an extension of these traditionally recognized common law and Constitutional principles, applied by the Illinois legislature to a new form of technology. The Illinois legislature granted its citizens the means to enforce a right to privacy with respect to biometric identifiers and to prohibit companies from collecting and using that data without consent. Facebook invaded that right when it took Plaintiffs' biometric data without their consent and without telling them what it planned to do with the information. Plaintiffs have standing to seek redress.

### 2.    The Illinois Legislature exercised its judgment to protect an individual's interest in the privacy of their biometric data.

Even if BIPA did not follow from the common law, which it does, the statute still creates a valid legal right concerning a concrete harm. The power of the legislature is not limited by strict adherence to the common law, and a legislative body can create "new rights of action that do not have clear analogs in our common law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment). Indeed, even the common law itself is only in force in Illinois by an act of the Legislature, *Hardin v. Jordan*, 140 U.S. 371, 386 (1891), and the Legislature "has the full power to repeal or modify the common law as thus declared, except as restrained by constitutional limitation." *People ex rel. Ferrill v. Graydon*, 164 N.E. 832, 835 (Ill. 1928). To create a new cause of action, the legislature must "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment). The Illinois Legislature did just that here.

BIPA was sparked by an incident in which a company had collected a consumers' biometric data, and, when the company went into bankruptcy, it became clear that consumers were unaware of exactly who had collected their data and what they were allowed to do with it. (*See* Dkt. 70-2.) To solve this problem, the Legislature required entities collecting biometric identifiers to get consent first, and to tell consumers exactly what they planned to do with the identifiers and how long they planned to keep it. As this Court has already recognized:

> The [Illinois] legislature expressly found that: (1) "Biometrics are unlike other unique identifiers...[and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions" ([740 ILCS] at 14/5(c)); (2) "[t]he full ramifications of biometric technology are not fully known" (*id*. at 14/5(f)); and (3) "[t]he public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information" (*id*. at 14/5(g)). In connection with these findings, the Illinois legislature implemented a series of safeguards intended to protect the privacy of personal biometric data.

(Dkt. 120 at 18.) In short, in the judgment of the Illinois legislature, consumers who unwittingly gave away their unique biometric data without their consent and without the opportunity to consider this important information have been injured and are entitled to relief.

That said, the principle that a legislative body can define new legal rights, the invasion of which is an injury sufficient to support Article III standing, is limited in order to "keep[] courts out of political disputes by denying private litigants the right to test the abstract legality of government action." *Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974)). Congress or the Illinois legislature could not, for example, pass a law requiring an "executive agency to 'follow the law'" and expect that obligation to be privately enforceable without some showing of harm beyond the violation of the statute itself. *Id.* But that is not what the Illinois Legislature did. It created a right that protects the privacy of consumers' unique and unchangeable biometric data. "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *Id*. at 1553.

Although the plaintiff in a recent BIPA case, *McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108, (N.D. Ill. Aug. 1, 2016), was unable to present the court with a

cogent explanation of why she had suffered a concrete injury, *see* Plaintiff's Response to

Defendant's 12(b)(1) and 12(b)(6) Motion to Dismiss, *id.* Dkt. 26 (June 27, 2016), the Plaintiffs

here do not have that problem. They have explained that they alleged an invasion of the private

right defined by the Illinois Legislature in BIPA, both by Facebook's failure to make the required

disclosures and its collection of their biometric data without consent, and they have therefore

suffered an injury sufficient to allow them to pursue their claims in federal court. *Cf. In re

Nickelodeon Consumer Privacy Litig.*, 2016 WL 3513782, at *7 ("Congress has long provided

plaintiffs with the right to seek redress for unauthorized disclosures of information that, in

Congress's judgment, ought to remain private."); *Bona Fide Conglomerate, Inc. v.

SourceAmerica*, No. 14 Civ. 00751(GPC)(DHB), 2016 WL 3543699, at *8 (S.D. Cal. June 29,

2016) (holding, after a discussion of Article III standing in light of *Spokeo*, that plaintiff "alleged

a concrete and particularized injury—violation of its privacy rights—that is actual and

imminent."). Further, unlike the plaintiff in *McCollough*—who did not identify the concrete

informational or other injury she suffered—Plaintiffs here detailed the specific ways that they

suffered both tangible harm, because Facebook invaded their property interest in their faceprints,

and intangible harm, because Facebook failed to give them information that they were entitled to

by law and because Facebook invaded their privacy. Because the *McCollough* court arrived at its

decision without the benefit of that explanation—and because the case was wrongly decided as a

result—it should not guide this Court's reasoning.[4] Article III poses no bar to the Court's

jurisdiction here.

---

[4]    Compounding the district court's error in *McCullough* is its conclusion that "a state statute cannot confer federal constitutional standing." 2016 WL 4077108, at *4. Both Seventh and Ninth Circuit authority is to the contrary. *See FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-created legal rights, therefore, must suffice to satisfy Article III's injury requirement. Thus, even in the absence of a specific finding that FMC was injured by the misappropriation of its confidential business information, FMC sufficiently alleged the violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement."); *Cantrell*, 241 F.3d at 684 ("We agree with the Seventh Circuit that state law can create interests that support standing in federal courts.") (citing *FMC*, 852 F.2d at 992).

1

2

### III.   If There Is a Question about Federal Jurisdiction, Licata's Case Must Be Severed and Remanded to Illinois State Court And Gullen's Case Must Be Remanded To California State Court.

3

4   Finally, *Spokeo* absolutely does not change who has the burden to demonstrate federal

5   jurisdiction at every stage of the litigation. "[U]nder CAFA the burden of establishing removal

6   jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court."

7   *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). If there is a dispute with

8   regard to jurisdictional issues, "the burden is on the party removing the case from state court to

9   show the exercise of federal jurisdiction is appropriate." *Id.* Because of the "strong presumption

10   against removal jurisdiction[,] ... the court resolves all ambiguity in favor of remand to state

11   court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

12   Facebook removed Licata's case from the Circuit Court of Cook County, Illinois to the

13   United States District Court for the Northern District of Illinois and removed Gullen's case to

14   this Court from Superior Court of California, County of San Mateo. As the party asserting

15   federal jurisdiction, Facebook maintains the burden to demonstrate that Licata and Gullen have

16   Article III standing, which it has now disavowed. As explained in detail above, there is no

17   question that plaintiffs have Article III standing here, since each has unambiguously suffered an

18   injury in fact. However, should the Court determine that it is a close question, then there is no

19   need to decide whether Licata or Gullen have properly alleged such an injury. Instead, per 28

20   U.S.C. § 1447(c), Licata's case must be severed and remanded to Cook County and Gullen's

21   case remanded to San Mateo County. *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344

22   F.3d 931, 938 (9th Cir.), *opinion amended and superseded on denial of reh'g,* 350 F.3d 916 (9th

23   Cir. 2003) ("[S]ection 1447(c) means that if it is discovered at any time in the litigation that there

24   is no federal jurisdiction, a removed case must be remanded to the state court rather than

25   dismissed."); *Langford v. Gates*, 610 F. Supp. 120, 122-23 (C.D. Cal. 1985) (lack of standing is a

26   jurisdictional defect, and "the proper course is remand" under § 1447(c), "not dismissal").[5]

---

[5]   Facebook itself acknowledged this point at the June 29, 2016 status conference.

27   *See* Transcript of Proceedings, *In re Facebook Biometric Information Privacy Litigation*, Case No. 15-CV-3747, at 12:11-14 (N.D. Cal. June 29, 2016) (counsel for Facebook stating that "we

28   think a remand would be appropriate if, and only if, the Court determines it does not have subject matter jurisdiction.").

1   Facebook may attempt to argue that there is a "futility" exception to § 1447(c) that allows

2   the Court to dismiss Licata's case instead of remanding to state court. Although a 1991 Ninth

3   Circuit decision accepts the rule that dismissal is permitted under § 1447(c) where "there is

4   absolute certainty that remand would prove futile," *Bell v. City of Kellogg*, 922 F.2d 1418, 1425

5   (9th Cir. 1991), it is far from clear whether that case is still good law. *See, e.g.*, *Villanueva v. 3M*

6   *Co.*, No. CV160183DMGRAOX, 2016 WL 837896, at *3 (C.D. Cal. Mar. 3, 2016) ("To the

7   extent that *Bell* stands for the proposition that federal courts may dismiss rather than remand

8   upon finding that remand would be futile, *Bell* is no longer good law.").

9   In any event, *Bell* doesn't apply here because remand isn't futile. Far from following

10   federal standing law, Illinois has "expressly rejected federal principles of standing." *Lebron v.*

11   *Gottlieb Mem'l Hosp.*, 930 N.E.2d 895, 917 n.4 (Ill. 2010). Rather, in Illinois, the doctrine of

12   standing is meant to ensure only that courts decide "actual, specific controversies" instead of

13   "abstract questions or moot issues." *In re Marriage of Rodriguez*, 545 N.E.2d 731, 733-34 (Ill.

14   1989). Standing is meant to preclude persons having "no interest in a controversy from "bringing

15   suit, but not to preclude "valid suit" from being litigated. *Id.* at 734. With those policy goals in

16   mind, the Illinois Supreme Court has held that standing requires "*only* some injury in fact to a

17   legally cognizable interest." *Greer v. Illinois Hous. Dev. Auth.*, 524 N.E.2d 561, 574-75 (Ill.

18   1988) (emphasis added). As an affirmative defense, it is "the defendant's burden to plead and

19   prove lack of standing." *Id.* at 575.[6] Consistent with Illinois law, in a recent BIPA case, a Cook

20   County, Illinois court refused to dismiss the plaintiff's claim for lack of standing based on

21

22

23   [6]   Although Facebook argues that Illinois "follows federal principles of standing," (Dkt. 129 at
     13), that is incorrect. The single case it cites for that principle, *Maglio v. Advocate Health &*
24   *Hosps. Corp.*, 40 N.E.3d 746, 753 (Ill. App. Ct. 2015), states only that federal standing principles
     are "similar" to those in Illinois and that federal "case law is instructive." That does *not* mean
25   that Illinois automatically adopts every U.S. Supreme Court pronouncement on standing. *See,*
     *e.g.*, *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 685 N.E.2d 1370,
26   1377 (Ill. 1997) ("In Illinois, standing is part of the common law. However, federal principles of
     standing are grounded largely on the jurisdictional case and controversy requirements imposed
27   by article III of the United States Constitution."). In any event, there's no reason for a federal
     court to rule on Illinois standing doctrine when an Illinois court is perfectly able to consider that
28   issue on remand.

*Spokeo*. Transcript of Proceedings, *Rottner v. Palm Beach Tan, Inc.*, No. 15-cv-16695, at 38:15-17 (Cir. Ct. Cook County July 12, 2016) (attached hereto as Exhibit A). Likewise, California does not have a standing requirement remotely similar to Article III. *Jasmine Networks, Inc. v. Superior Court*, 103 Cal. Rptr. 3d 426, 432 (Ct. App. 2009) (stating that "[t]here is no similar requirement [to Article III standing] in our state Constitution," and collecting cases).

"[B]ecause a successful assertion of standing in state court" is not only "conceivable" but has happened recently in a similar case, the futility exception couldn't apply even if *Bell* were still good law. *See Bell*, 922 F.3d at 1425. Accordingly, if the Court lacks subject matter jurisdiction (which it does not), then remand is the only option for Licata's and Gullen's cases.

## CONCLUSION

Defendants' motion to dismiss should be denied because the Court has subject matter jurisdiction over this action. If the Court should determine that it lacks jurisdiction, then Licata's case must be severed and remanded to the Circuit Court of Cook County, Illinois, and Gullen's case must be remanded to the Superior Court of California, County of San Mateo.

Respectfully submitted,

**ADAM PEZEN**, **CARLO LICATA**, **NIMESH PATEL**, individually and on behalf of all others similarly situated,

Dated: August 4, 2016

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
J. Dominick Larry (Admitted *pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (Admitted *pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100

San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9495

Shawn A. Williams (213113)
shawnw@rgrdlaw.com
David W. Hall (213113)
dhall@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Tel: 415.288.4545
Fax: 415.288.4534

Paul J. Geller (Admitted *pro hac vice*)
pgeller@rgrdlaw.com
Stuart A. Davidson (Admitted *pro hac vice*)
sdavidson@rgrdlaw.com
Mark Dearman (Admitted *pro hac vice*)
mdearman@rgrdlaw.com
Christopher C. Martins (Admitted *pro hac vice*)
cmartins@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Tel: 561.750.3000
Fax: 561.750.3364

Frank A. Richter (Admitted *pro hac vice*)
frichter@rgrdlaw.com
James E. Barz (Admitted *pro hac vice*)
jbarz@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
200 S. Wacker, 31st Floor
Chicago, Illinois 60606
Tel: 312-674.4674

Travis E. Downs III (Admitted *pro hac vice*)
travisd@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
Tel: 619.231.1058
Fax: 619.231.7423

Joel H. Bernstein (Admitted *pro hac vice*)
jbernstein@labaton.com
Corban S. Rhodes (Admitted *pro hac vice*)

crhodes@labaton.com
Ross M. Kamhi (Admitted *pro hac vice*)
rkamhi@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Tel: 212.907.0700
Fax: 212.818.0477

*Counsel for In re Facebook Biometric Info.*
*Plaintiffs and the Putative Class*

Respectfully submitted,

**FREDERICK GULLEN**, individually and on
behalf of all others similarly situated,

By: /s/ Frank S. Hedin
One of Plaintiffs' Attorneys

Frank S. Hedin (291289)
fhedin@careyrodriguez.com
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel: 305.372.7474
Fax: 305.372.7475

Francis A. Bottini, Jr. (175783)
fbottini@bottinilaw.com
Albert Y. Chang (296065)
achang@bottinilaw.com
Yury A. Kolesnikov (271173)
ykolesnikov@bottinilaw.com
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Tel:  858.914.2001
Fax:  858.914.2002

*Counsel for Plaintiff Frederick Gullen and the*
*Putative Class of Non-Users*