1
MAYER BROWN LLP
John Nadolenco (SBN 181128)
2
350 South Grand Avenue
25th Floor
3
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
4
jnadolenco@mayerbrown.com

5
Lauren R. Goldman (*pro hac vice*)
1221 Avenue of the Americas
6
New York, NY 10020
Telephone: (212) 506-2647
7
lrgoldman@mayerbrown.com

8
*Counsel for Defendant Facebook, Inc.*

9

10
## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
11

## SAN FRANCISCO DIVISION
12

13
IN RE FACEBOOK BIOMETRIC
INFORMATION PRIVACY LITIGATION

14

15

16
THIS DOCUMENT RELATES TO:

17
ALL ACTIONS

18
————————————————————

19
FREDERICK WILLIAM GULLEN, on behalf
of himself and all others similarly situated,

20
                    Plaintiff,

21
        v.

22
FACEBOOK, INC.,

23
                    Defendant.

24

25

26

27

28

**FACEBOOK, INC.'S MOTION FOR
SUMMARY JUDGMENT BASED ON
ILLINOIS' EXTRATERRITORIALITY
DOCTRINE AND THE DORMANT
COMMERCE CLAUSE**

Master Docket No.: 3:15-CV-03747-JD

Date: January 25, 2018
Time: 10:00 a.m.
Location: Courtroom 11

Hon. James Donato

*[Proposed Order and Declarations of Omry
Yadan and John Nadolenco filed concurrently
herewith]*

Case No. 3:16-cv-00937-JD

**REDACTED VERSION OF DOCUMENT(S)
SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    The Illinois Biometric Information Privacy Act ..................................... 2

    B.    The Location Of Facebook's Facial-Recognition Analysis ..................... 2

    C.    Plaintiffs' Claims ................................................................................... 5

SUMMARY JUDGMENT STANDARD ....................................................................... 6

ARGUMENT ................................................................................................................ 6

I.    PLAINTIFFS' PROPOSED APPLICATION OF BIPA IS IMPERMISSIBLY
EXTRATERRITORIAL ...................................................................................... 6

    A.    The Most Important Factor In The Extraterritoriality Inquiry Is The
Location Of The Alleged Statutory Violation:  Facebook's
Facial-Recognition Analysis And The Storage Of Data Derived From That
Analysis .................................................................................................. 8

    B.    Facebook's Facial-Recognition Analysis, Including The Creation And
Storage Of "Templates," Takes Place Outside Illinois .......................... 10

    C.    Plaintiffs' Illinois Residency Is An Insufficient State Nexus .............. 11

    D.    There Is No Evidence Of Any Other Relevant Illinois Connection ................. 12

II.    IF APPLIED HERE, BIPA WOULD VIOLATE THE CONSTITUTION'S
DORMANT COMMERCE CLAUSE ................................................................ 13

    A.    The Statute Would Regulate Out-Of-State Conduct ............................. 13

    B.    The Statute Would Subject Facebook To Inconsistent Legal Regimes ............... 14

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) .......................................................................14

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)...............................................................................14

*Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*,
244 F. Supp. 3d 750 (N.D. Ill. 2017) .................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ..........................................................................1, 6, 7, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................6

*David K. Lindemuth Co. v. Shannon Financial Corp.*,
637 F. Supp. 991 (N.D. Cal. 1986) ..................................................................12

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .............................................................6

*Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*,
43 Ill. 2d 1 (1969) ....................................................................2, 6, 7, 8, 10, 12

*Hackett v. BMW of N. Am., LLC*,
2011 WL 2647991 (N.D. Ill. June 30, 2011) ...................................................12

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)...................................................................................13, 14

*Instr. Sys. v. Comp. Curriculum Corp.*,
35 F.3d 813 (3d Cir. 1994)...............................................................................14

*Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*,
361 Ill. Dec. 661 (App. Ct. 2012) ..................................................................8, 9

*Landau v. CNA Fin. Corp.*,
381 Ill. App. 3d 61 (2008) ..........................................................................1, 7, 8

*Midwest Title Loans, Inc. v. Mills*,
593 F.3d 660 (7th Cir. 2010) ...........................................................................14

*Miller UK Ltd. v. Caterpillar Inc.*,
2017 WL 1196963 (N.D. Ill. Mar. 31, 2017)......................................................7

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .......................................................6, 10

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)...........................................................................................9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ...........................................................................6

*Pac. Merch. Shipping Ass'n v. Goldstene*,
  639 F.3d 1154 (9th Cir. 2011) .....................................................................13, 14

*Pharm. Research & Mfrs. of Am. v. Concannon*,
  249 F.3d 66 (1st Cir. 2001)...............................................................................14

*Phillips v. Bally Total Fitness Holding Corp.*,
  372 Ill. App. 3d 53 (2007) ..................................................................................8

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017)...............................................................14

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................................6, 9

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ..........................................................................14

*Smith v. United States*,
  507 U.S. 197 (1993).............................................................................................7

*Valley Air Serv. v. Southaire, Inc.*,
  2009 WL 1033556 (N.D. Ill. Apr. 16, 2009) ................................................11, 12

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ............................................................11, 13

**Statutes And Rules**

740 ILCS 14/5.......................................................................................................2

740 ILCS 14/10.....................................................................................................2

740 ILCS 14/15.....................................................................................................2

765 ILCS 1065/8....................................................................................................7

2012 Cal. Leg. Serv. Ch. 733 § 1 (S.B. 1161) (Sept. 28, 2012) ...................................15

Cal. Sen. Bill No. 169 (July 5, 2001)........................................................................15

Fed. R. Civ. P. 56(a) ...........................................................................................6

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on January 25, 2018, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. will and hereby does move for summary judgment under Federal Rule of Civil Procedure 56. Facebook respectfully submits that it is entitled to judgment on all of plaintiffs' claims based on Illinois' extraterritoriality doctrine and the dormant Commerce Clause of the U.S. Constitution. Facebook's motion is based on this notice of motion and motion; the memorandum of points and authorities that follows; the supplemental brief filed in the *Gullen* action; the accompanying declaration of Omry Yadan; the accompanying declaration of John Nadolenco; the pleadings, papers, and other documents on file in these actions; and such other evidence and argument presented to the Court at or prior to any hearing in this matter. Facebook requests oral argument on this motion.

Facebook reserves its right to move for summary judgment on other grounds, if necessary, by March 16, 2018, the last day for the parties to file dispositive motions under the Court's Amended Scheduling Order; this motion is submitted without prejudice to filing a later summary judgment motion on other grounds. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 910-11 (9th Cir. 2010); *In re Capacitors Antitrust Litig.*, 2016 WL 5724960, at *2 (N.D. Cal. Sept. 30, 2016) (Donato, J.).

**INTRODUCTION**

Plaintiffs' claim in this case is that Facebook violated the Illinois Biometric Information Privacy Act ("BIPA") by using facial-recognition technology to analyze their photos, and create and store "templates" for them, without giving them adequate notice or obtaining their consent. Facebook believes that this claim is meritless for several reasons, most of which will be addressed in a motion for summary judgment to be filed at the close of expert discovery. But one critical threshold point is beyond dispute: If Facebook's use of facial-recognition technology *did* violate BIPA, that alleged violation took place outside Illinois. The facial-recognition process occurs on Facebook's servers, none of which is in Illinois. And the "templates" that plaintiffs allege to be "biometric identifiers" are created, updated, and stored on those same servers. Neither Illinois law nor the federal Constitution permits the application of BIPA to that conduct. The Court should grant summary judgment in Facebook's favor.[1]

Illinois courts rigorously enforce the rule that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005). Because BIPA contains no such provision, plaintiffs must prove that the alleged violation took place "primarily and substantially" in Illinois—*i.e.*, that "the majority of circumstances related to the alleged violation" of the statute occurred in that State. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63-65 (2008) (quoting *Avery*, 216 Ill. 2d at 187). In declining to give BIPA extraterritorial reach, the General Assembly made a policy choice: to protect the biometric data of its citizens, but to permit them to sue only where the unauthorized collection and storage takes place in Illinois.

Here, the alleged BIPA violations took place *outside* Illinois: Facebook performs its facial-recognition analysis—including the creation, updating, and storage of "templates" for Facebook users—on its servers, *none of which is located in Illinois*. The only Illinois connection alleged by plaintiffs is their own residency. And that is plainly insufficient: Illinois courts have

---

[1] This brief provides the background and arguments that are common to the user and non-user actions. A separate short brief addresses problems unique to the non-user case.

routinely dismissed cases on the *pleadings* where the plaintiffs were state residents but failed to allege that *all* of the events "essential to defendants' liability . . . t[ook] place in Illinois." *Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*, 43 Ill. 2d 1, 4 (1969).

Plaintiffs' proposed application of BIPA would also violate the dormant Commerce Clause, which bars state regulation where the "practical effect" is to control conduct in other states. If applied here, BIPA would impose direct obligations on Facebook's analysis of photos and storage of information outside Illinois, and it would displace the *inconsistent* policy of California, which has considered and rejected a law regulating facial-recognition technology.

# BACKGROUND

## A. The Illinois Biometric Information Privacy Act

BIPA was enacted in 2008 to address the "growing" "use of biometrics" by businesses operating in Illinois. 740 ILCS 14/5(a). The Illinois General Assembly found that "[m]ajor national corporations ha[d] selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." *Id.* 14/5(b).

BIPA regulates the collection and storage of (1) "biometric identifiers" and (2) "biometric information." "Biometric identifier means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," with certain exclusions. *Id.* 14/10. "Biometric information" is defined as "any information . . . based on an individual's biometric identifier used to identify an individual." *Id.* BIPA requires entities that "collect, capture, purchase . . . or otherwise obtain a person's or a customer's biometric identifier or biometric information" to first (1) inform the person of the collection or storage, as well as its purpose and length of term, "in writing"; and (2) obtain a "written release." *Id.* 14/15(b). Private entities must also develop and publish a written policy on the retention and destruction of biometric data. *Id.* 14/15(a).

## B. The Location Of Facebook's Facial-Recognition Analysis.

Facebook's Tag Suggestions feature simplifies photo-tagging. Broadly speaking, when a person uploads a photo to Facebook, Facebook employs facial-recognition technology to

determine whether any of the uploader's Facebook friends appear in the photo so that it can prompt the uploader to tag those friends automatically. Users can turn the feature off at any time; Facebook then deletes any information previously derived from photos of that person.

Two Facebook engineers—Yaniv Taigman and Omry Yadan—were particularly instrumental to the development of this technology. They worked together at Face.com, an Israeli firm that developed the technology and licensed it to Facebook; Mr. Taigman was Face.com's co-founder and Chief Technical Officer (Taigman Dep. (Ex. 1 [2]) at 26-27, 38), and Mr. Yadan wrote computer code related to the technology (Yadan Dep. (Ex. 2) at 20; Yadan Decl. ¶ 4). After Facebook acquired Face.com in 2012, both men began working at Facebook as software engineers. Taigman Dep. at 100-01; Yadan Dep. at 51; Yadan Decl. ¶ 4. Their deposition testimony, Mr. Yadan's declaration, and the documents produced by Facebook all demonstrate where and how the various steps of the facial-recognition analysis take place.

Facebook is headquartered in California. 11/2/2017 Form 10-Q (Ex. 3) at 1. "The computers, servers, and databases used to provide services to people with Facebook accounts are located in nine 'Data Centers' maintained by Facebook." Yadan Decl. ¶ 6. None of the Data Centers is (or has ever been) located in Illinois, and no employees who work on this technology have ever been based in Illinois. *Id.* ¶¶ 6-7; *see also* FBBIPA_00044570 (Ex. 1 to Yadan Decl.).

Facebook's facial-recognition process has four steps: detection; alignment; representation; and classification. Yadan Decl. ¶ 9; Yadan Dep. at 84; Taigman Dep. at 128-29. ███████████████████████████████████████████████████████████[3]

1.    *Face detection*. First, Facebook's software analyzes the pixels in a photo to "determin[e] whether and where a face appears in an image." *Id.* ¶ 13. This step determines

---

[2]    Unless otherwise indicated, all exhibits are attached to the Declaration of John Nadolenco, filed concurrently, and all docket entries refer to the *Facebook Biometric* docket. Certain cited documents are attached to the Declaration of Omry Yadan, filed concurrently.

[3]    Because of the specific legal issues raised by this motion, this brief does not go into detail on the algorithms that Facebook uses for facial recognition. Facebook will provide more details when, if necessary, it files its motion for summary judgment on other issues later in the litigation. Facebook will also show that there is no "scan of face geometry" at any stage of the process.

whether *any* faces are present; it "does not attempt to identify *whose* face is present." *Id.*; *see* Yadan Dep. at 98-99, 117-18, 149; Taigman Dep. at 126-127, 130-33, 137-40, 171. ████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████[4]

      **2.**    *Alignment*. ████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████

      **3.**    *Representation*. ██████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

      **4.**    *Classification*. ████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

[4]

██████████████████████████████████████████████████████████████████████████

████████████████████

4

Facebook never creates or stores templates for non-users, and it never suggests that a non-user be tagged in a photo. *Id.* at 369; Yadan Decl. ¶ 30-33. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### C. Plaintiffs' Claims

The three plaintiffs in *In re Facebook Biometric Information Privacy Litigation*, No. 15-cv-3747 (N.D. Cal.), allege that they are residents of Illinois with active Facebook accounts. Compl. (Dkt. 40) ¶¶ 7-9, 32, 39, 46. They claim that photos of them were uploaded to Facebook and tagged by other users, and that Facebook "use[d] facial recognition software" on these photos to "calculate[] a unique digital representation of the face (which it calls a 'template')." *Id.* ¶¶ 23. Plaintiffs claim that this "template data" "is a form of biometric identifier" (*id.* ¶ 24); that Facebook "stored these biometric identifiers in a database" (*id.* ¶ 26); and that Facebook violated BIPA by failing to make the requisite disclosures to, and obtain adequate releases from, plaintiffs before collecting and storing this data (*id.* ¶¶ 65-67).

Frederick Gullen, the plaintiff in No. 16-cv-0937 (N.D. Cal.), is a resident of Illinois, but he "is not, and has never been, a Facebook user." *Gullen* Compl. (Dkt. 1-1) ¶ 7. He alleges that someone uploaded a photo of him to Facebook; that Facebook extracted "geometric data" about his face; and that Facebook violated BIPA by using that data "to create a digitized template of his face," and then "storing face templates in its database" without his consent. *Id.* ¶¶ 23, 27-28.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), either by "produc[ing] evidence negating an essential element of the nonmoving party's claim," or by "show[ing] that the nonmoving party does not have enough evidence of an essential element," *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets this initial burden, the burden then shifts to the nonmovant to "produce evidence to support its claim or defense." *Id.*

## ARGUMENT

### I.  PLAINTIFFS' PROPOSED APPLICATION OF BIPA IS IMPERMISSIBLY EXTRATERRITORIAL.

This Court has held that Illinois law applies to plaintiffs' claims. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1168-70 (N.D. Cal. 2016). Illinois has a "long-standing rule of construction" that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, 216 Ill. 2d at 184-85. "[N]one of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect." *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017). Plaintiffs therefore must prove that their "asserted violations of the Act . . . have taken place in Illinois." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).[5]

---

[5]  The extraterritoriality analysis is distinct from the question of *which* state's law applies to a plaintiff's claims. *See Graham*, 43 Ill. 2d at 5-6 (the extraterritoriality "problem . . . is not one

1    The Court must give effect to the General Assembly's policy decision not to apply BIPA

2    to conduct outside Illinois. "The question of whether [a statute] should be given extraterritorial

3    effect is a question of policy . . . uniquely one for the legislature, not the courts, to ponder and

4    decide." *Graham*, 43 Ill. 2d at 7; *see also id.* at 8 ("The legislature's failure to enact a provision

5    giving [a statute] extraterritorial effect may well have been prompted by a variety of reasonable

6    policy considerations"). The General Assembly was aware that BIPA would be subject to

7    Illinois' extraterritoriality doctrine, and drew a careful balance: to protect the biometric data of

8    its citizens, but to allow them to bring lawsuits only where the unauthorized collection and

9    storage of biometric data occurs in Illinois. *See Avery*, 216 Ill. 2d at 186; *Graham,* 43 Ill. 2d at

10   6; *Smith v. United States*, 507 U.S. 197, 204 (1993) ("Congress legislates against the backdrop of

11   the presumption against extraterritoriality.").[6]

12   A "transaction may be said to take place within a state if the circumstances relating to the

13   transaction occur *primarily and substantially* within that state." *Avery*, 216 Ill. 2d at 186

14   (emphasis added). This means "the *majority* of the circumstances relating to the alleged

15   [statutory] violation" must have occurred in the State. *Landau*, 381 Ill. App. 3d at 65 (emphasis

16   added). There is no genuine dispute of material fact in this regard: As we next discuss, (a) the

17   key question is where Facebook's facial-recognition analysis is performed and where the

18   resulting data is stored; (b) that conduct takes place outside Illinois; (c) plaintiffs' residency in

19   Illinois is insufficient under well-settled law; and (d) there is no evidence in the record of any

20   other Illinois connection bearing on plaintiffs' claims.

---

21   of conflict or choice of laws"); *Landau*, 381 Ill. App. 3d at 63 (the two doctrines present
     "different issue[s]"). In resolving the choice-of-law question, a court determines which state has
22   the greater interest in a dispute; in analyzing extraterritoriality, the court *effectuates* the policy
     decisions made by that State. *Graham*, 43 Ill. 2d at 5-6.

23

24   [6]   Other Illinois statutes underscore that the General Assembly knows exactly how to draft a
     statute with extraterritorial reach. *See, e.g.*, *Miller UK Ltd. v. Caterpillar Inc.*, 2017 WL
25   1196963, at *7 (N.D. Ill. Mar. 31, 2017) ("In contrast to the consumer fraud statute at issue in
     *Avery*, [the Illinois Trade Secrets Act] states that 'a contractual or other duty to maintain secrecy
26   or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of
     durational or geographical limitation on the duty.' 765 ILCS 1065/8(b)(1). It is thus apparent
27   that [the statute] lacks a geographical limitation.").

28

**A.**   **The Most Important Factor In The Extraterritoriality Inquiry Is The Location Of The Alleged Statutory Violation:  Facebook's Facial-Recognition Analysis And The Storage Of Data Derived From That Analysis.**

Plaintiffs' claims rest on their allegation that Facebook "[u]sed facial recognition software" on photos of them to "calculate[] a unique digital representation of the face (which it calls a 'template')," that these "templates" are "a form of biometric identifier," and that Facebook "stored these biometric identifiers in a database" without their consent.   Compl. ¶¶ 23-24, 26-27.   The location of this conduct is the most critical fact at summary judgment. Although the extraterritoriality inquiry generally encompasses multiple factors that depend on the particular case, the most important are the "circumstances relating to the *alleged violation of the [statute]*."   *Landau*, 381 Ill. App. 3d at 65 (emphasis added).

In *Graham*, the seminal case on this subject, the plaintiff sued several purveyors of alcohol under the Illinois Dram Shop Act based on injuries from a drunk-driving accident.  43 Ill. 2d at 2.  The statute provided that anyone injured by an intoxicated person could sue "any person who *by selling or giving alcoholic liquor[]* causes the intoxication, in whole or in part, of such person."  *Id.* at 3 (emphasis added).  Both the plaintiff and the drunk driver were "residents of Illinois"; the defendants' liquor stores were in Illinois; and the "selling" of "alcoholic liquor" had taken place in Illinois.   *Id.* at 2, 4. But the Illinois Supreme Court deemed all of these connections insufficient because the "the automobile accident causing the plaintiff's injuries occurred in Wisconsin." *Id.* at 2.  The court explained that a statute without extraterritorial effect cannot be invoked where "*[t]he occurrence constituting th[e] necessary element of liability* did not take place in Illinois." *Id.* at 4 (emphasis added).  Because the car accident was an element "[e]ssential to defendants' liability under the . . . Act," the Act did not apply.  *Id.*

Numerous Illinois cases are in accord.  *See, e.g.*, *Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53, 58-59 (2007) (Illinois statute did not apply because "the allegedly *fraudulent practices* occurred" outside the State (emphasis added)); *Landau*, 381 Ill. App. at 64 (dismissing Consumer Fraud Act claim against Illinois insurer—even though the plaintiff's policy was written, sold, paid for, and reviewed in Illinois, and the fraud was conceived there—

because the allegedly "deceptive communication" occurred in Pennsylvania); *Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 361 Ill. Dec. 661, 672 (App. Ct. 2012) ("alleged deception" occurred in Florida); *Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017) (refusing to apply Illinois Uniform Fraudulent Transfer Act despite the plaintiff's allegation "that the defendants acted in Illinois when they orchestrated and received" the "fraudulently transferred property," because "the transactions at issue involved the transfer of assets between and among a number of foreign entities," and the "lion's share" of the profits for the scheme were reaped by individuals outside Illinois).[7]

Two federal courts have recognized this rule in BIPA cases. In *Rivera*, the court denied Google's motion to dismiss on extraterritoriality grounds because the record had not yet been developed on "*where [Google's] alleged scans actually t[ook] place*." 238 F. Supp. 3d at 1102 (emphasis added). It explained that "[t]he question" under this doctrine "is whether *Google's activities—making face templates of [the plaintiffs] in photographs*"—"are an extraterritorial (and therefore not-actionable) application of" BIPA. *Id.* at 1101 (emphasis added). Given the absence of record evidence on that key issue, the complaints "tip[ped] toward" sufficiency because the plaintiffs had alleged, *in addition* to State residency, that their photographs were taken and uploaded in Illinois and that Google had failed to provide the plaintiffs with required disclosures and obtain their consent in Illinois. *Id.* at 1101-02. The court gave the parties a "chance to develop" these facts, while noting that "for the purposes of" BIPA, Google did not "need[] consent to upload the photographs"; "[i]t is only the collection of the biometric identifier (the scan) that requires consent [under BIPA]." *Id.* at 1102 & n.11.[8] Similarly, in *Monroy*, the

---

[7]     A similar rule exists under federal law. *See, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) (violation is "domestic" only when it reflects "the 'focus' of congressional concern"; because "the focus of the [Securities] Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States," the statute could not be applied to securities traded on foreign exchanges).

[8]     Notably, in denying Google's subsequent motion for an interlocutory appeal of an unrelated issue, the *Rivera* court explained that an interlocutory appeal "would not necessarily speed the case's end" because Google had also presented "substantial arguments" on extraterritoriality and the dormant Commerce Clause that might "advance the ultimate termination of the litigation." *Rivera* 1292(b) Order (Ex. 4) at 1-2.

court denied Shutterfly's motion to dismiss based on Illinois' extraterritoriality doctrine because it was "*unclear where the actual scan of Monroy's face geometry took place, and where the scan was stored once it was obtained*"; that "require[d] a fuller understanding of how Shutterfly's facial recognition technology operates." 2017 WL 4099846, at *6 (emphasis added).

**B.** **Facebook's Facial-Recognition Analysis, Including The Creation And Storage Of "Templates," Takes Place Outside Illinois.**

There is no evidence in the record that Facebook performed a facial-recognition analysis on plaintiffs' photographs—or otherwise collected, captured, obtained, or stored their alleged biometric identifiers—in Illinois. Because the use of facial recognition and the creation and storage of templates obviously constitute "necessary element[s] of liability" and "did not take place in Illinois," Facebook is entitled to summary judgment. *Graham*, 43 Ill. 2d at 4.

As discussed above, three of the four steps in the facial-recognition process—alignment, representation, and classification—*always* occur entirely on Facebook's servers. ███████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

No calculation, amendment, or storage of templates happens in Illinois.

In sum, the conduct that plaintiffs allege violates BIPA—Facebook's "use[]" of "facial recognition software" to "calculate[] a unique digital representation of the face" and its "stor[age]" of that information "in a database" (Compl. ¶¶ 23, 26)—takes place on Facebook's servers outside Illinois. These facts entitle Facebook to summary judgment.

## C. Plaintiffs' Illinois Residency Is An Insufficient State Nexus.

Plaintiffs have alleged only a single Illinois connection: that they are residents of Illinois. Although that is a relevant factor in certain circumstances, it is insufficient on its own. The Illinois courts have repeatedly and consistently held that where the plaintiff is an Illinois resident but the defendant's allegedly violative conduct took place outside the State, the application of an Illinois statute would be impermissibly extraterritorial.

In *Graham*, the plaintiff, the drunk driver, and the defendant liquor stores were all residents of Illinois. But the Illinois Supreme Court held that the Dram Shop Act did not apply, because the car accident "occurred in Wisconsin." 43 Ill. 2d at 2, 4. The Supreme Court later explained that the extraterritoriality analysis is not "based on the residency of the plaintiff" but rather on whether "the circumstances relating to the transaction occur primarily and substantially within" Illinois. *Avery*, 216 Ill. 2d at 182, 186; *see also Valley Air Serv. v. Southaire, Inc.*, 2009 WL 1033556, at *12 (N.D. Ill. Apr. 16, 2009) (*Avery* considered a test based on the plaintiff's residency but "went on to adopt an entirely different test").

Courts have applied this doctrine in a broad range of contexts, including that of Internet transactions. In *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008), the court dismissed a class action against several Internet companies that allegedly "engaged in a massive scheme to use deceptive domain names on the Internet to generate billions of advertising dollars at the expense of the plaintiffs." *Id.* at 759. Applying *Avery*, the court explained that although "*each [plaintiff] is a resident of the state* and each conducts substantial business in this state, the plaintiffs point to no allegations that plausibly suggest that the purported deceptive domain scheme occurred primarily and substantially in Illinois." *Id.* at 775 (emphasis added).

11

Later, in *Valley Air*, an Illinois operator of charter flights sued the defendants for fraud in connection with the purchase of an aircraft. *See* 2009 WL 1033556, at *1-2. The plaintiff was "an Illinois citizen" that "communicated with [the defendant] from Illinois" and "felt injury in Illinois"; it therefore contended that Illinois' Consumer Fraud Act was "available regardless of where the wrongful activity occurred." *Id.* at *12. The court dismissed, finding the plaintiff's position to be "at odds with . . . *Avery*": The defendant was "located in Arkansas" and "all of the work on the plane occurred in Arkansas"; those facts were "at the heart of [the plaintiff's] claim and constitute[d] the overwhelming bulk of the circumstances relating to the alleged fraud." *Id.*

Finally, in *Hackett v. BMW of N. Am., LLC*, 2011 WL 2647991 (N.D. Ill. June 30, 2011), the court dismissed a putative class action under the Consumer Fraud Act alleging that BMW had mischaracterized the fuel pump in certain vehicles. *Id.* at *1. The plaintiff was "an Illinois resident" who "drove the vehicle in Illinois," and "experienced the [alleged fuel-pump] failure in Illinois." *Id.* at *2. But the court dismissed this claim, finding that he had failed to allege that the "fraudulent conduct . . . occurred in Illinois" because he claimed "that he was induced to purchase the vehicle" by advertisements disseminated from a BMW dealer in Missouri. *Id.*

## D. There Is No Evidence Of Any Other Relevant Illinois Connection.

Even if *all* other events relating to plaintiffs' BIPA claims took place in Illinois, there would be no genuine issue of material fact, because Facebook's collection and storage of alleged biometric data is "essential" to their claims. *Graham*, 43 Ill. 2d at 4. But in any event, other than plaintiffs' residency, the record contains no evidence of any relevant Illinois connection.

Facebook's alleged failure to provide notice and obtain plaintiffs' consent in connection with its use of facial-recognition software does not supply any connection to Illinois: First, plaintiffs' allegation is that Facebook *did not act* in Illinois, and the *absence* of action has no meaningful "location." *Cf. David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 994 (N.D. Cal. 1986) ("[t]here is no 'place' where [an] omission occur[s]"). Second, Illinois cases are clear that the extraterritoriality doctrine cannot be satisfied based solely on the location of the plaintiff (whether it is the location of his residency, his interaction with the defendant, or

his injury) if an indispensable element of the claim takes place outside the State. And third, the conduct most relevant to notice and consent is *Facebook's* decisions about, and creation of, its disclosures. *See, e.g.*, *Vulcan Golf*, 552 F. Supp. 2d at 775 (dismissing Consumer Fraud Act claim against Internet company where allegedly deceptive scheme was devised out of state). There is no evidence that any decisions about Facebook's disclosures were made in Illinois (*cf.* Yadan Decl. ¶ 8), or that the disclosures that *were* transmitted to users—like Facebook's Data Policy—were drafted in or sent from Illinois. Plaintiffs' claims fail.

## II.    IF APPLIED HERE, BIPA WOULD VIOLATE THE CONSTITUTION'S DORMANT COMMERCE CLAUSE.

The U.S. Constitution ensures that one state's policy decisions do not encroach on those of another. The "dormant Commerce Clause" limits "the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). Two specific restrictions are relevant here. First, the clause "precludes the application of a state statute" that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," even where "the commerce has effects within the State." *Id.* at 336. Second, the clause "protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Id.* at 337; *see also Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1178 (9th Cir. 2011) (courts must "tak[e] into account the possibility that other states may adopt similar extraterritorial schemes and thereby impose inconsistent obligations"). If applied here, BIPA would violate both of these limitations.

### A.    The Statute Would Regulate Out-Of-State Conduct.

On plaintiffs' theory, BIPA would restrict Facebook's ability to perform a facial-recognition analysis or create or save a template on its out-of-state servers. It would therefore have the "practical effect" of controlling "conduct beyond the boundaries of the [regulating] State"—an unconstitutional result notwithstanding any "effects within the state," such as alleged injuries to state residents. *Healy*, 491 U.S. at 336.

In *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc), several California artists sued two auction houses and eBay under California's Resale Royalty Act, which "require[d] the seller of fine art"—the defendants—"to pay the artist a five percent royalty if the 'seller reside[d] in California.'" *Id.* at 1322. The plaintiffs alleged that "some sales took place in California and that other sales took place outside California but on behalf of a seller who is a resident of California." *Id.* The Ninth Circuit "easily conclude[d] that the royalty requirement . . . violate[d] the dormant Commerce Clause": It "regulat[ed] out-of-state art sales where the 'seller reside[d] in California,' and *no other connection to California need exist*." *Id.* at 1323-24 (emphasis added) (citation omitted). The *plaintiffs'* residency was irrelevant: "It matters not that . . . the royalty amount eventually may wind up" in California. *Id.*

Numerous other courts "have invalidated state laws regulating the internet where the . . . conduct occur[s] outside the borders of the state." *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1023 (E.D. Cal. 2017) (citing cases). "Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without project[ing] its legislation into other States." *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003); *see also ACLU v. Johnson*, 194 F.3d 1149, 1161 (10th Cir. 1999). A state can certainly regulate an Internet company by narrowly tailoring its statute to conduct that takes place within the State (which the General Assembly *did*, by choosing to regulate only the in-state collection and storage of biometric data). But the Commerce Clause forbids a state from regulating the out-of-state conduct of an Internet company based solely on the theory that the effects of that conduct are felt in Illinois.

### B. The Statute Would Subject Facebook To Inconsistent Legal Regimes.

To make matters worse, applying BIPA in this case would *conflict* with the policies of other states. *See Healy*, 491 U.S. at 336; *Pac. Merch.*, 639 F.3d at 1178.[9] Illinois is one of only

---

[9] *See Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 667-68 (7th Cir. 2010) (dormant Commerce Clause does not require a showing of "inconsistent obligations"; "the absence of . . . [a] counterpart" law in another state shows that it "thinks [the conduct] shouldn't be restricted in the [same] way"). *But see Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 82-83 (1st Cir. 2001); *Instr. Sys. v. Comp. Curriculum Corp.*, 35 F.3d 813, 826 (3d Cir. 1994).

three states that regulate biometric technology in any form.[10]  And California, where Facebook is headquartered, has *considered and rejected* a law that would have regulated "facial recognition technology"—defined as "the use of a facial image in combination with a system to record and translate facial features, or the spatial relationship between facial features, into a unique numerical template."  Cal. Sen. Bill No. 169 (July 5, 2001).  The Commerce Clause precludes Illinois from overriding the decisions of California and other states to stay out of this area.

Because the largest and most successful technology companies in the world are based in California, that State has a uniquely strong interest in creating a regulatory environment that supports innovation and entrepreneurial activities on the Internet.  The California Legislature has enshrined that objective into statute, stating that "[t]he continued vitality and success of California's technology and innovation sector of the economy is dependent on a business climate that supports the . . . Internet."  2012 Cal. Leg. Serv. Ch. 733 § 1(a)(1) (S.B. 1161) (Sept. 28, 2012).  It has adopted an express "policy of regulating Internet-based services *only as specified by the Legislature*."  *Id.* § 1(b) (emphasis added).  That policy could not be sustained if other states were permitted to project their policies onto California web services.

## CONCLUSION

The Court should grant summary judgment in favor of Facebook.

Dated:  December 8, 2017

MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco
    Lauren R. Goldman

*Counsel for Defendant Facebook, Inc.*

---

[10]  Washington and Texas have such statutes, but neither provides a private right of action.