CAREY RODRIGUEZ
MILIAN GONYA, LLP
Frank S. Hedin (CA SBN 291289)
fhedin@careyrodriguez.com
David P. Milian
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*Counsel for Plaintiff Gullen*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FREDERICK WILLIAM GULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:16-cv-00937-JD<br><br>**PLAINTIFF FREDERICK WILLIAM GULLEN'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(3) AND FED. R. CIV. P. 23(b)(2)** |

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Frederick William Gullen ("Gullen") hereby moves for (1) certification of a class of all non-users of Facebook whose face appeared in a photo uploaded to Facebook from an Illinois-based internet-protocol address; (2) appointment of Gullen as class representative; and (3) appointment of Carey Rodriguez Milian Gonya, LLP as class counsel.

## I.   INTRODUCTION

Gullen, a former director and horticulturist for the Glenview, Illinois Park District and the lead plaintiff in this putative class action lawsuit, has never enrolled in any of Facebook's services but has nonetheless had his immutable, personally identifying and highly sensitive biometric data collected by Facebook, without his knowledge let alone consent. Gullen alleges individual and class claims against Facebook for collecting his and millions of other non-users' "scans of face geometry" – personally identifying biometric data extracted from user-uploaded photographs – in willful violation of Illinois' Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/15.

Enacted by the Illinois General Assembly in 2008 to address the "very serious need [for] protections" for personal biometric data, Illinois House Transcript, 2008 161 Reg. Sess. No. 276, BIPA makes it unlawful for a private company to, inter alia, collect or disseminate an individual's "biometric identifiers," including "scans of face geometry," without first notifying the individual of the purpose and duration of such collection and obtaining the individual's signed written release. The statute further requires any entity in possession of biometrics to comply with a series of procedural

safeguards pertaining to the retention and destruction of, and the standard of care to be used while handling, this sensitive biological data.

Facebook operates the world's largest social media website and violates BIPA in nearly every possible way.  For the past several years, Facebook has engaged in the wholesale, nonconsensual and indiscriminate collection of highly-sensitive biometric data, known as "scans of face geometry," from every face appearing in every photograph uploaded by its billions of users, including the scans of face geometry of non-users of Facebook who reside in the state of Illinois. Facebook has engaged in this uniform practice in Illinois without obtaining a signed written release from any non-user as required by BIPA, without providing anyone with the statutorily required data retention and destruction policies as required by BIPA, and without using the requisite standard of care in handling anyone's sensitive biometric data as required by BIPA.

This case is thus perfectly suited for class treatment.  Gullen and the proposed non-user class members assert the exact same claims against the same defendant for the same relief arising out of the same misconduct, rendering nearly every issue in this case capable of resolution in one stroke with class-wide proof.  The Court should certify the proposed Non-User Class pursuant to Rules 23(b)(3) and 23(b)(2).

## II.    BACKGROUND FACTS

Gullen's claims for violation of BIPA against Facebook are exceedingly simple. They arise from a uniform practice employed by Facebook, and will either succeed or fail based upon the resolution of factual and legal questions that are largely beyond dispute.  Generally speaking, BIPA requires private entities to obtain a signed written

release before collecting, storing or using an individual's "biometric identifiers," a term specifically defined to include "scans of face geometry."  740 Ill. Comp. Stat. 14/10. "Scans of face geometry" extracted from digital photos are "biometric identifiers" within the meaning of the statute. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016).

At all times relevant to this litigation, Facebook has stated publicly on its website that "[w]e are able to suggest that your friend tag you in a picture by **scanning** and comparing your friend's pictures to information we've put together from the other photos you have been tagged in." FBBIPA_00001134 (emphasis added). According to the same website, this process is performed by "**facial recognition software that uses an algorithm to calculate <u>a unique number ('template') based on someone's facial features, like the distance between the eyes, nose and ears</u>**." *See* Ex. 1, at FBBIPA_00001134 (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16     Facebook failed to obtain a signed written release from Gullen or any other non-

17 user of Facebook prior to collecting their scans of face geometry as required by BIPA.

18 And that makes sense, because non-users of Facebook like Gullen have by definition

19 not signed up for Facebook, have chosen not to submit information to Facebook, and

20 thus could not possibly have provided Facebook any form of consent, written or

21 otherwise, to the collection of their scans of face geometry.

22     Facebook has the means to comply with BIPA in Illinois but has simply chosen

23 not to.  Facebook can comply with BIPA in Illinois by refraining from collecting face

24 signatures, i.e., scans of face geometry, from photographs uploaded from within the

state of Illinois, as determined by the IP address of the device uploading the photograph – just as it has complied with a similar biometrics law in the state of Texas.[1]

### III.   APPLICABLE LEGAL STANDARD

A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 583 (C.D. Cal. 2012) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

In this case, Gullen seeks certification under Rule 23(b)(3), which permits class actions for damages where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

---

[1] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Facebook should do the same in Illinois. Facebook has no God-given right to indiscriminately gather the world's immutable biometric data. Whatever trivial amount of social utility "tag suggestions" may offer Illinois is far outweighed by the invasiveness of the underlying technology to non-users like Gullen.

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Gullen also seeks certification

pursuant to Rule 23(b)(2), which provides that "the party opposing the class has acted

or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Fed. R. Civ. P. 23(b)(3).

The district court must conduct a rigorous analysis to determine whether

Gullen has met his burden to pursue his claims as a class action. *See Eisen v. Carlisle

& Jacquelin*, 417 U.S. 156, 161 (1974).  Nonetheless, Rule 23 "grants courts no license

to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v.

Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).   The

question before the Court  "is not whether . . . [Plaintiff] ha[s] stated a cause of action

or will prevail on the merits, but rather whether the requirements of class certification

are met.'" *Eisen*, 417 U.S. at 178.

## IV.    THE PROPOSED NON-USER CLASS SHOULD BE CERTIFIED

Certification of the following class is proper under Fed. R. Civ. P. 23:

> All individuals who have never subscribed to Facebook.com
> or any other Facebook, Inc. service and, while residing in
> Illinois, whose face was depicted in a photograph uploaded
> to Facebook.com from a device assigned an Illinois-based
> internet protocol address at any point in time between
> August 31, 2010 and the present (the "Non-User Class").

As set forth below, the proposed Non-User Class satisfies all the requirements of Rule

23(a) and should be certified pursuant to both Rule 23(b)(3) and Rule 23(b)(2).

## A. The Criteria of Rule 23(a) are Satisfied

Plaintiff has set forth prima facie facts that satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. The Motion should be granted.

### 1. The Proposed Class is so Numerous that Joinder is Impracticable

Rule 23(a)(1) requires the classes to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). And where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007).

Numerosity cannot reasonably be disputed in this case. "Approximately 58% of Americans had Facebook accounts as of 2015, and Illinois had about 12.9 million residents at that time. Assuming Illinois residents use Facebook at national average rates, that means there are about 7.5 million Facebook users in the state."[2] And that also means there are about 5.4 million non-users of Facebook in the state (and millions more who pass through the state every day). *See id.* So while the precise number of

---

[2]     Strahilevitz, Lior and Kugler, Matthew B., Is Privacy Policy Language Irrelevant to Consumers?, chicago unbound 2 n.5 (2016), http://chicagounbound.uchicago.edu/law_and_economics/796.

7

1   Non-User Class members is unknown, the Court can reasonably infer that the millions

2   of Facebook users residing in Illinois have uploaded millions of photos in Illinois

3   containing millions of faces of non-Facebook users who reside in Illinois, just as

4   occurred with respect to Gullen.  *See In re Abbott Labs.*, 2007 WL 1689899, at *6.

5   Joinder of parties so numerous would thus be burdensome, expensive, and

6   impracticable to both the parties and the courts.  Accordingly, the numerosity

7   requirement of Rule 23(a)(1) is satisfied.

8   **2.  Questions of Law and Fact are Common to the Proposed Class**

9        To satisfy the commonality requirement of Rule 23(a)(2), Gullen must identify

10  "a common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc.*

11  *v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

12  147, 157 (1982)).  That is, "determination of [the contention's] truth or falsity will

13  resolve an issue that is central to the validity of each one of the claims in one stroke."

14  *Id*.  "All questions of fact and law need not be common to satisfy the rule." *Hanlon v.*

15  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Rodriguez v. Hayes*, 591 F.3d

16  1105, 1122 (9th Cir. 2010) (noting that "common" does not mean "complete

17  congruence").  "What matters to class certification is . . . the capacity of a classwide

18  proceeding to generate common *answers* apt to drive the resolution of the litigation."

19  *Dukes*, 131 S. Ct. at 2551 (emphasis in original); *see also Stockwell v. City & County of*

20  *San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[A] common contention need not

21  be one that 'will be answered, on the merits, in favor of the class.'  Instead, it only

22  'must be of such a nature that it is capable of classwide resolution – which means that

23  determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke.'") (quoting *Amgen*, 568 U.S. at 466) (emphasis in original).

In this case, there is a complete identity of common factual and legal issues: the central question is whether Facebook violated BIPA by collecting the scans of face geometry of members of the Non-User Class. Gullen alleges Facebook collected "face signatures" of every person in every photograph uploaded in Illinois without providing prior notice or attempting to obtain a signed written release from anyone. There are thus multiple common questions, including whether Facebook collected "face signatures" from every face in all uploaded photographs, whether "face signatures" constitute "scans of face geometry" within the meaning of the statute, whether Facebook collected these scans of face geometry "negligently" or "willfully," and whether Facebook's BIPA violations arising from the collection of the Non-User Class's scans of face geometry occurred in Illinois.  And if these questions are answered in the affirmative, each Non-User Class member will have suffered the same injury and be entitled to statutory damages.

Proof of the elements of BIPA is necessarily common because it will focus upon the same Facebook technology that was uniformly used to collect and analyze data pertaining to the geometry of every face appearing in every uploaded photograph. Such evidence will concern Facebook's internal operations and source code, almost certainly revealing its willful collection of scans of face geometry from faces appearing in all photographs uploaded to Facebook.  Because neither Gullen nor any other member of the Non-User Class ever enrolled in Facebook's services, Facebook cannot possibly have obtained a signed written release from any member of the Non-User

Class.  As such, proof of the elements of a claim for violation of BIPA will necessarily require the same evidence for any one plaintiff as it will for the class as a whole, and resolution of these common questions will necessarily generate common answers. *Cf., e.g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) (in TCPA class action, finding commonality and certifying a class of debtors who did not communicate with the debt collector in any way prior to receiving automated calls).

Accordingly, the Non-User Class satisfies the commonality requirement of Rule 23(a)(2).

### 3.  Plaintiff's Claims Are Typical of the Proposed Class's Claims

Rule 23(a)(3) requires Gullen to have claims that are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(3)'s "typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover North America*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon*, 976 F.2d at 508. The Ninth Circuit has emphasized that "'[t]ypicality refers to the nature of the claim . . . and not to the specific facts from which it arose or the relief sought.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

The typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of the absent class

members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also*

*Cifuentes v. Red Robin Int'l*, No. C-11-5635-EMC, 2012 WL 693930, at *5 (N.D. Cal.

Mar. 1, 2012) ("Some degree of individuality is to be expected in all cases, but that

specificity does not necessarily defeat typicality."). Thus, where a "[p]laintiff's claims

are based upon the same course of events as the claims of all class members, and all

claims are based on the same theories and will be proven by the same evidence," they

are typical of the claims or defenses of the class.  *In re Celera Corp. Sec. Litig.*, No.

5:10-CV-02604-EJD, 2014 U.S. Dist. LEXIS 25098, at *9 (N.D. Cal. Feb. 25, 2014).

In this case, the essential characteristics of Gullen's claims and those of the

Non-User Class he seeks to represent are more than significant—they are practically

identical.  As an initial matter, after nearly a year of discovery, Facebook has not been

able to produce a shred of evidence that Gullen or any other Non-User Class member

ever consented to the collection of their scan of face geometry, or that any of the

remaining statutory requirements were satisfied as to Gullen or any member of the

Non-User Class.  As with all other Non-User Class members, Facebook obtained

Gullen's scan of face geometry not from Gullen himself but from a photograph

uploaded by a Facebook user in Illinois.

Discovery has also confirmed that by operation of its source code and uniform

policies, Facebook collected Gullen's "face signature," i.e., his scan of face geometry,

from his photograph, and then used that scan of face geometry to compare against the

scans of face geometry stored in its database, for the purpose of enabling the "tag

suggestions" feature and thus enhancing the formidability of its brand in the eyes of

its users.  Discovery has further revealed that Facebook uniformly collected "face

11

signatures," i.e., scans of face geometry, from every face that appeared in every photo uploaded to Facebook, in the exact same manner as experienced by Gullen.  Thus, just like Gullen, each Non-User Class member, by definition, had his or her photograph uploaded to Facebook, and thus had his or her scan of face geometry collected by Facebook.  Accordingly, the claims of Gullen and the claims of the Non-User Class members "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 163 n.13 (1982); *Ades v. Omni Hotels Mgmt. Corp.*, No. 13-02468, 2014 WL 4627271, at *9 (C.D. Cal. Sept. 8, 2014) (finding class representatives' claims typical where "course of conduct...common to the class, and privacy invasions typical to those of the class generally" were alleged).

Accordingly, Gullen's claims satisfy the typicality requirement of Rule 23(a).

### 4.  Plaintiff and His Counsel Will Adequately Represent the Class

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has established a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).  Both prongs are satisfied here.

Gullen and his Counsel are undoubtedly adequate to represent the proposed Non-User Class.  Foremost, Gullen has the same interests as the other members of the Non-User Class.  Like every other member of the Non-User Class he seeks to

represent, Gullen had his scan of face geometry collected by Facebook without his

authorization in violation of BIPA.  Gullen and all members of the Non-User Class

share the same interest in putting a stop to Facebook's conduct and in recovering the

same statutory damages to which they are entitled under BIPA.  Further, Gullen has

and vigorously prosecuted this case, including by assisting his counsel with the

investigation of this action and the filing of the Complaint, by sitting for deposition in

this matter, and by responding to whatever discovery Facebook has served.  (Hedin

Decl. ¶ 6.)  Gullen is an adequate class representative.

Gullen's counsel is also qualified to serve as class counsel.  *See* Fed. R. Civ. P.

23(g)(1)(A) (requiring that a district court appoint class counsel for any class that is

certified). In appointing class counsel, Rule 23(g) lists four factors for consideration: (1)

the work counsel has done in identifying or investigating potential claims in the

action; (2) counsel's experience in handling class actions or other complex litigation

and the type of claims in the litigation; (3) counsel's knowledge of the applicable law;

and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ.

P. 23(g). In evaluating the adequacy of counsel, "a court may examine the attorneys'

professional qualifications, skill, experience, and resources. The court may also look at

the attorneys' demonstrated performance in the suit itself."  *In re Emulex Corp. Sec.*

*Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).

Gullen's counsel at Carey Rodriguez Milian Gonya, LLP have vigorously

prosecuted this action at every stage of the litigation, including by investigating the

factual and legal basis for these claims, initiating this action (first in the Northern

District of Illinois and then in this Court), engaging in substantial discovery, and filing

and opposing procedural and substantive motions.  (Hedin Decl. ¶ 2.)  Gullen's counsel have substantial experience litigating class action claims generally and class claims for violation of BIPA in particular.  (*Id.* ¶ 3.)  Gullen's counsel have been appointed class counsel in other cases in the consumer privacy realm (*id.*), and have obtained multiple important decisions on issues of first impression concerning the construction and application of BIPA in the online facial recognition context, including (1) the first decision holding that scans of face geometry collected from photographs fall within the statutory scheme, *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015); (2) the first decision holding that neither the presumption against extraterritoriality nor the dormant commerce clause is violated by applying BIPA to prohibit the collection of scans of face geometry from photographs of Illinois residents uploaded from devices assigned Illinois-based IP addresses, *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017); and (3) the first decision holding that the nonconsensual collection of a scan of face geometry, a bare violation of BIPA, is invasive of privacy and thus manifests, in and of itself, a concrete and particularized injury sufficient to confer Article III standing, *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017).  (Hedin Decl. ¶ 4.)  Gullen's counsel will prosecute this action vigorously on behalf of the Non-User Class just as they have other similar BIPA cases in the past.  (*Id.* ¶ 5.)

Accordingly, both prongs of the adequacy requirement of Rule 23(a)(4) are satisfied in this case.

**B. The Non-User Class Is Properly Maintained Pursuant to Rule 23(b)(3)**

The proposed Non-User Class also satisfies the dual requirements of Rule 23(b)(3): (1) common issues predominate across the Non-User Class, and (2) a class action is the superior method to handle these claims.

**1. Common Issues Predominate**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Amgen Inc.*, 133 S. Ct. at 1191 (emphasizing that Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"). The predominance analysis "focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted).

This does not mean, however, that individual issues need be entirely absent. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008) ("[F]ederal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question."); *Chun–Hoon v. McKee Foods Corp.*, 2006 WL 3093764, at *5 (N.D. Cal. Oct. 31, 2006) (noting that "even though individual issues exist, they do not bar class certification"). Rather,

"[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

The predominance requirement is easily satisfied because this entire case revolves around Facebook's uniform treatment of the Non-User Class pursuant to the same uniform policy. *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (Where "liability turns on [a] ... uniform policy that is uniformly implemented, . . . predominance is easily established" and "[c]lass certification is usually appropriate."); *Kernats v. Comcast Corp.*, 2010 WL 4193219, at *8 (N.D. Ill. Oct. 20, 2010) (where "a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation"). Indeed, as previously discussed in the commonality and typicality analysis sections above, this case turns on evidence of Facebook's uniform treatment of the millions of Non-User Class members. Facebook literally programmed itself to operate exactly the same way with regard to all of its user-uploaded photographs – namely, detecting all human faces in each photograph, collecting a scan of face geometry from each detected face, and then comparing each collected scan of face geometry against the company's stored database of previously-collected scans of face geometry, which correspond to names of Facebook users. If a match exists, then the corresponding user's "tag" is suggested. But in order to determine in the first instance whether a scan of face geometry corresponds to a Facebook user, Facebook necessarily collects the scan of face geometry from every

person, user and non-user alike, whose face appears in a photograph uploaded to

Facebook.

The uniform nature of Facebook's facial recognition practices that are at issue

in this case necessarily implicates numerous questions of law and fact common to

across the entire Non-User Class, including:

- whether a face signature constitutes a "scan of face geometry" within a

  meaning of the statute;

- whether Facebook's conduct was "negligent" or "willful;"

- whether Facebook's collection of a scan of face geometry of an Illinois

  resident from a photograph uploaded from an Illinois-based IP address

  constitutes a violation of BIPA that occurred in Illinois; and

- whether it is technologically feasible for Facebook to come into reasonable

  compliance with BIPA in Illinois such that the prosecution of these claims

  does not violate the dormant commerce clause.

Thus, if the Non-User Class is certified, this entire action can be adjudicated by

resolving questions of law and fact common to members of the Non-User Class, and

ultimately based upon common proof.

The decision of Judge Koh in *In re Yahoo Mail Litigation*, 308 F.R.D. 577 (N.D.

Cal. 2015), is both factually and legally opposite.  In that case, a class of non-users of

Yahoo Mail sued Yahoo for intercepting e-mail they had sent to Yahoo Mail users, in

alleged violation of the Stored Communications Act and California's Invasion of

Privacy Act.  In certifying the class of non-users, the district court reasoned: "Whether

Yahoo intercepts emails to and from non-Yahoo mail subscribers while those emails

are in transit is a 'common contention' that 'is capable of classwide resolution' and 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Yahoo Mail Litig.*, 308 F.R.D. at 590-91 (quoting *Dukes*, 131 S. Ct. at 2552).[3] The exact same kind of uniform practice exists here, and likewise calls for resolution of a contention common across the Non-User Class.

Moreover, there cannot possible be any individual issues of consent across the Non-User Class because it is beyond dispute that Facebook uniformly failed to notify or obtain any form of consent from *any* Non-User Class members prior to collecting their biometrics.  Indeed, as discussed above, the proposed Non-User Class is comprised entirely of individuals who have never enrolled in or otherwise held an account with Facebook, much less uploaded a photograph of themselves to Facebook.  As such, Facebook could not possibly have provided any member of the Non-User Class prior notice of its biometrics collection practices, and not a single member of the Non-User Class could possibly have provided Facebook a signed written release authorizing the collection of their biometrics.  And after nearly a year of extensive discovery, Facebook has not produced any evidence of notice or consent, written or otherwise, for Gullen or a single other Non-User Class member.  Accordingly, there are no individual issues of consent that exist across the Non-User Class.  *See, e.g., Silbaugh v. Viking Mag. Servs.*, 278 F.R.D. 389, 393 (N.D. Ill. 2012) ("Having produced no evidence that any individual consented . . ., defendant is unable to realistically

---

[3]      Although the district court in *In re Yahoo Mail* did not reach the issue of predominance because plaintiffs there only sought certification under Fed. R. Civ. P. 23(b)(2), its rationale that the basic elements of an SCA claim are "central to the validity" of the claims and can thus be adjudicated class wide illustrates why predominance is established here.

argue that individual issues regarding consent outweigh the commonality."); *Manno*, 289 F.R.D. at 686 (finding predominance satisfied and certifying TCPA class action, stating: "Obviously, if the putative class members did not communicate with [the defendant] before [the defendant] called them, there is no way those class members could have provided consent to [the defendant]."); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (finding predominance where plaintiff argued that "issues surrounding consent are subject to common proof because the proposed search will identify persons called by defendant's agent who were third parties").[4]

Finally, Facebook's dormant commerce clause defense will be subject to common proof and capable of resolution class wide because the defense focuses exclusively on Facebook's ability to comply with BIPA in Illinois without substantially burdening commerce outside of Illinois in the process.  The issues relevant to this inquiry are the same for all members of the Non-User Class, which is specifically defined to encompass individuals who, while residing in Illinois, suffered BIPA violations that occurred in Illinois.  Thus, whether Facebook could feasibly have refrained from collecting the Non-User Class members' scans of face geometry in violation of BIPA without unduly burdening its commercial activities elsewhere is a question capable of resolution in one stroke and with common proof across the entire Non-User Class.

---

[4]    In any event, issues of consent have limited bearing on the predominance inquiry because lack of a signed written release is not an element of a BIPA plaintiff's prima facie case; rather, the existence of a signed written release is an affirmative defense for which Facebook bears the burden of proof.  And again, Facebook will not be able to provide even a single example of a signed written release from any member of the proposed Non-User Class, as not a single proposed Non-User Class member has ever subscribed to Facebook, by definition.

### 2.  A Class Action is Superior to Any Alternative and Would Be Manageable

A class action is the superior method to resolve the Non-User Class members' claims, and the class-wide resolution of those claims would be manageable.  This is so for several reasons.

First, certification of the Non-User Class would promote consistency of rulings and judgments, and provide all parties the benefit of finality by resolution in a single action.  *See In re Online DVD Rental Antitrust Litig.*, No. 09-2029, 2010 WL 5396064, at *12 (N.D. Cal. Dec. 23, 2010) *aff'd*, 779 F.3d 934 (9th Cir. 2015) ("[T]he only difficulties likely to be encountered in this case would result from not certifying the class, given the expenditure of time and resources that would result--from both the court's and the parties' perspectives--in requiring each class member's action to proceed independently.").

Second, a class action is the only mechanism, practically speaking, available to Gullen and Non-User Class members to seek redress for Facebook's violations of BIPA. The resources required to litigate these claims render individual litigation unviable and impracticable.  *Mendez v. C-Two Grp., Inc.*, 2015 WL 8477487, at *8 (N.D. Cal. Dec. 10, 2015) ("The Court finds that a class action is superior to thousands of individual small-claims cases.").  As a result, without certification, members of the Non-User Class would lose their rights by attrition, and Facebook would be able to continue its Orwellian biometrics collection practices with impunity. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to

1   bring a solo action prosecuting his or her rights. A class action solves this problem by

2   aggregating the relatively paltry potential recoveries into something worth someone's

3   (usually an attorney's) labor.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338,

4   344 (7th Cir. 1997)).

5       Third, class-wide resolution of the Non-User Class's claims would be

6   manageable.  As discussed above, the central issue of liability for the entire Non-User

7   Class hinges on the several common questions and categories of proof set forth above –

8   e.g., either Facebook collected scans of face geometry from every face appearing in

9   every photo, or it did not; either Facebook collected these scans of face geometry in

10  willful violation of BIPA, or it did not; either applying BIPA to Facebook's conduct in

11  this case violates the dormant commerce clause, or it does not; and so on.  Measuring

12  the class-wide statutory damages, which is the only monetary relief sought by Gullen

13  on behalf of himself and the Non-User Class, would not be unmanageable because

14  Facebook either acted willfully or negligently as to all or none of the class-wide

15  violations, so the statutory recovery per violation ($1,000.00 if negligent or $5,000.00 if

16  willful) would be the same for Gullen and all Non-User Class members.[5]  *See Six (6)*

17  *Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir. 1990) (affirming

18  class certification, explaining that individualized proof manageability issues "are not

19  at issue where the underlying statute permits awards without a showing of actual

20  damage").

21

22

23

24

[5]     Gullen specifically disclaims any entitlement under BIPA to actual damages on behalf of himself or any member of the Non-User Class.

Nor would it be unmanageable for Class members to establish membership in the Class.  If necessary, "[c]lass members could provide individual affidavits averring [that their photo was uploaded in Illinois and while they resided in Illinois], and Defendant[] [will] be unable to rebut with anything other the unfounded testimony of [its corporate witnesses]." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014).  "Reviewing these affidavits would not be unduly burdensome for the Court, especially in light of the alternative of dealing with thousands of individual lawsuits." *Id*.  Moreover, the alternative option – "limiting the classes only to those person's whose membership can be proved by reference to some other party's records" – would be "fundamentally unfair to potential [Non-User Class] members," especially given that Facebook made no effort to identify let alone record the identity of these individuals prior to collecting their biometric identifies.  *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 249 (N.D. Ill. Aug. 11, 2014).  Thus, individuals should be able to self-identify as members of the Non-User Class, just as Gullen prior to initiating this litigation, without affecting the manageability of the case as a class action. To hold otherwise would reward Facebook for failing to maintain records identifying the Non-User Class members, whose biometrics the company indiscriminately and nonconsensually collected for its own business purposes and in violation of an important, duly-enacted consumer protection statute. *See also Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10, 2017) (denying motion to decertify class where plaintiffs conceded that they have been unable to obtain records sufficient to establish class membership in TCPA case).

A class action is superior to other methods of resolving these claims and would be manageable.  Accordingly, the Non-User Class should be certified pursuant to Rule 23(b)(3).

**C. Alternatively, Class Certification Is Appropriate Under Rule 23(b)(2)**

Rule 23(b)(2) permits certification where the prerequisites of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Predominance and superiority are not required under Rule 23(b)(2). *See In re Yahoo Mail Litig.*, 308 F.R.D. at 597.

In this case, Facebook's collection of a scan of face geometry from every face appearing in every photo uploaded to its website is a uniform practice that "appl[ies] generally to the class." *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043-1045 (9th Cir. 2012) (affirming certification of a 23(b)(2) class).  Gullen therefore seeks an order enjoining Facebook from collecting scans of face geometry from photographs uploaded to Facebook from Illinois-based IP addresses, except to the extent Facebook first notifies and obtains a signed written release from each person depicted in each photograph (or the legally authorized representative of each person depicted in each photograph) prior to collecting any scans of face geometry from a particular photograph.  *See* 740 Ill. Comp. Stat. 14/15(b)(3) (requiring, prior to collection, "a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative," inter alia).

Facebook will likely argue that certification of a 23(b)(2) class is improper

1    because Gullen primarily seeks monetary relief.  But that argument fails for two

2    reasons in this case.

3         First, BIPA specifically authorizes plaintiffs to seek both statutory damages and

4    injunctive relief.  *See* 740 Ill. Comp. Stat. 14/20.  And while claims for monetary relief

5    generally may not be certified under 23(b)(2), district courts may "separately certify

6    *both* a (b)(2) class for the portion of the case concerning injunctive and declaratory

7    relief *and* a (b)(3) class for the portion of the case requesting monetary damages."

8    Newberg on Class Actions § 4:38 (5th ed.) (emphasis in original).[6]  District courts of

9    the Ninth Circuit have correctly applied this principle in certifying classes under

10   similar statutory schemes, such as the TCPA.  *See Barrett v. Wesley Fin. Grp., LLC*,

11   2015 WL 12910740, at *7 (S.D. Cal. Mar. 30, 2015) ("In [TCPA] cases like this, where a

12   plaintiff seeks both declaratory and monetary relief, the court may certify a damages-

13   seeking class under Rule 23(b)(3), and an injunction- seeking class under Rule

14   23(b)(2).") (citing *Wang*, 737 F.3d at 544; *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642,

15   651 (W.D. Wash. 2007) (certifying classes under 23(b)(2) and (b)(3)).

16

17        Second, certification of separate Rule 23(b)(2) and (b)(3) classes is particularly

18   warranted where, as here, there is evidence that the availability of statutory damages

19   is insufficient by itself to deter a defendant from continuing to violate the statute.  For

20   example, in *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11CV1008 AJB RBB, 2011

21

22   [6]      *See also Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017)
     ("The use of ... hybrid certification, insulating the (b)(2) class from the money-damages portion
23   of the case, is an available approach that is gaining ground in class action suits.") (internal
     quotation omitted); *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (noting that when a
     "(b)(2) class seeks monetary as well as injunctive" relief, the court can certify "a (b)(2) class as
24   to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for
     monetary relief").

24

WL 11712610, at *1 (S.D. Cal. Sept. 14, 2011), like in this case, the plaintiffs sought both statutory damages and injunctive relief under the TCPA against a debt collector who called people without their consent. The district court certified an injunctive relief class where the defendant had knowingly continued to violate the TCPA despite being sued because "the economics of calling cellular telephones without consent outweigh[ed] the costs of TCPA liability." *Id*. at *7.  The Ninth Circuit affirmed. *Meyer*, 707 F.3d 1048 ("We have little difficulty concluding the record supports the district court's finding that PRA would have continued to violate the TCPA if an injunction had not been issued").

Similarly in this case, the conduct Gullen challenges – Facebook's nonconsensual collection of unwitting non-users' biometric data – has continued throughout this litigation and will continue in the future, further invading the privacy and violating the legal rights of Non-User Class members every time one of their faces appears in a photograph uploaded to Facebook in Illinois.  Because cessation of this invasive practice would benefit the Non-User Class as a whole, the Court should allow the Non-User Class to seek injunctive relief pursuant to Rule 23(b)(2), either in addition to, or as an alternative to, seeking damages pursuant to Rule 23(b)(3).  *See, e.g., Yahoo Mail Litig.*, 308 F.R.D. at 598 (certifying a class under Rule 23(b)(2) where "[p]laintiffs contend that all emails sent from and to Yahoo Mail subscribers are subject to the same interception and scanning processes [and thus] challenge a pattern or practice that is generally applicable to the class as a whole").

## IV.   CONCLUSION

Plaintiff Frederick William Gullen respectfully requests that the Court enter an order (1) certifying the Non-User Class pursuant to Rule 23(b)(3) and/or Rule 23(b)(2); (2) appointing Gullen as Class Representative; and (3) appointing Carey Rodriguez Milian Gonya, LLP as Class Counsel.

Dated:  December 8, 2017

Respectfully submitted,

By: /s/ Frank S. Hedin

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**

Frank S. Hedin (CA SBN 291289)
fhedin@careyrodriguez.com
David P. Milian
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

Francis A. Bottini, Jr. (175783)
fbottini@bottinilaw.com
Albert Y. Chang (296065)
achang@bottinilaw.com
Yury A. Kolesnikov (271173)
ykolesnikov@bottinilaw.com
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Counsel for Plaintiff Gullen*