CAREY RODRIGUEZ
MILIAN GONYA, LLP
Frank S. Hedin (CA SBN 291289)
fhedin@careyrodriguez.com
David P. Milian
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*Counsel for Plaintiff Gullen*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FREDERICK WILLIAM GULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:16-cv-00937-JD<br><br>**PLAINTIFF FREDERICK WILLIAM GULLEN'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(3) AND FED. R. CIV. P. 23(b)(2)** |

Plaintiff Frederick William Gullen ("Gullen") hereby submits this reply in further support of his motion for class certification pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2).

## I.  ARGUMENT

As explained in Gullen's motion for class certification, literally all of the pertinent legal and factual issues in this case are capable of resolution in one stroke for all members of the defined non-user class[1]. Discovery has revealed that all faces of all non-users appearing in all user-uploaded photographs, or at the very least all such photographs uploaded to personal as opposed to business or organizational pages, were and still are uniformly subjected to the same patented technological processes employed by Facebook during the class period. Accordingly, whether Facebook's technology collected "scans of face geometry" (it plainly did) is a question capable of resolution on a class-wide basis with common proof.  Likewise, whether Facebook provided the requisite notices and obtained the requisite written releases prior to collecting the class members' scans of face geometry (it indisputably did not) are questions common across the entire non-user class and thus also capable of resolution with common proof.

---

[1]  Gullen seeks to certify the following class under Rule 23(b)(3) and 23(b)(2):

> All individuals who have never subscribed to Facebook.com or any other Facebook, Inc. service and, while residing in Illinois, whose face was depicted in a photograph uploaded to Facebook.com from a device assigned an Illinois-based internet protocol address at any point in time between August 31, 2010 and the present (the "Non-User Class").

In the opposition brief, Facebook attempt to not only blur the merits of Gullen's claims with the procedural requisites of Rule 23, but to blur them to such an extent that the Court, rather than limiting its consideration to the facts relevant to the propriety of class certification, improperly considers the substantive merit of Gullen's claims. Gullen's motion for class certification must be decided on the facts relevant to Rule 23, not on the basis of subterfuge and obfuscation designed to elicit a premature decision on the merits. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

For the reasons set forth in Gullen's motion for class certification and in further detail below, Gullen's proposed non-user class should be certified pursuant to both Rule 23(b)(3) and Rule 23(b)(2).

**A. Gullen is Not Bound by the Class Definition Proposed in his Original Complaint**

Facebook argues that Gullen's "motion should be denied for the threshold reason that he seeks to certify a class that is material broader than the one described in his complaint. (Opp. at 3.) In support, Facebook cites to two cherry-picked district court decisions, but fails to mention that the federal judiciary, and especially the Ninth Circuit, is in near uniform agreement that a plaintiff is not bound by the class definition <u>proposed</u> in the original complaint, but rather may modify that definition at class certification after obtaining the necessary discovery bearing concerning the requirements of Rule 23. *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint"); *see also Battle v.*

*Commonwealth*, 629 F.2d 269, 271 n. 1 (3d Cir.1980) ("Where the class action seeks only injunctive or declaratory relief, for which the notice provision of Fed. R. Civ.P. 23(c)(2) is not mandatory, the district court has even greater freedom in both the timing and specificity of its class definition"); *Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974) ("[T]he precise definition of the [(b)(2)] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance.").

Gullen's amendment here comes after months of extensive fact discovery, and the class he seeks to certify is substantially narrower than the class he originally proposed. Modification of Gullen's original non-user class definition is certainly appropriate under these circumstances. *See Kohen v. Pacific Investment Management Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) ("[H]olding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in the class action litigation, particularly in the formation of a workable class definition"); *In re Monumental Life Ins. Co.*, 365 F. 3d 408, 414 (5th Cir. 2004) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.").

**B. The Requirements of Rule 23(b)(3) are Satisfied for the Non-User Class**

    **1. Facebook's Opposition Brief Confirms that Common Issues Predominate the Proposed Non-User Class**

Facebook's opposition cites to four issues that it says are individualized for members of the proposed non-user class: "(1) whether a class member has suffered a

sufficient injury to satisfy BIPA's 'aggrieved' requirement; (2) whether facial recognition was performed on his photo; (3) whether the application of BIPA to his claim would be impermissibly extraterritorial; and (4) whether his fact pattern fits within this Court's reading of BIPA's exception for 'information derived from' photos and thus cannot support a claim." (Opp. at 4.) Contrary to what Facebook would have the Court believe, each of these four issues is common for all non-user class members and thus capable of resolution in one stroke and with class-wide proof.[2]

The first and fourth issues identified by Facebook in the passage above are both pure questions of law that can be answered class-wide. Whether the invasion of privacy inherent in the nonconsensual collection of a scan of face geometry in violation of BIPA renders the subject class member "aggrieved" within the meaning of the statute is a question of law that can be resolved for everyone at once. *Cf. also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (agreeing with another circuit that "[s]o long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed [does] not defeat class certification"). Likewise, whether a scan of face geometry harvested from a digital photograph falls within BIPA's definition of "scan of face geometry" is also a pure question of law and, in fact, has already decided by this Court in favor of Gullen and all proposed class members.

---

[2] Facebook incorporates by reference its briefing filed in the user case, on top of the 14-page opposition brief it filed in this case. To the extent the Court considers Facebook's briefing filed in the user case in connection with deciding Gullen's motion for class certification, Gullen respectfully requests that the Court likewise consider the brief in support of class certification filed by the user plaintiffs on reply, to the extent not inconsistent with the arguments herein.

The third purported individualized issue cited by Facebook requires determining whether members of the proposed non-user class state claims for violation of BIPA that occurred in Illinois, i.e., whether the overall set of circumstances underlying a particular BIPA claim occurred primarily and substantially in Illinois. *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017). This question is also common as to each member of the non-user class because its answer turns on factual circumstances incorporated within the definition of the non-user class, including residence in Illinois at the time the source photo was uploaded, an Illinois-based upload location, and an upload from a device assigned an Illinois-based IP address. *See, e.g.*, *Rivera*, 2017 WL 748590, at *10 ("Assessing [the defendant's extraterritoriality] arguments at this initial stage, the Court concludes that the Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois."). And in view of the foregoing circumstances, which are common to all members of the proposed non-user class, it is clear that Facebook could have but failed to obtain the requisite informed written consent prior to collecting the biometrics of those members of the non-user class in Illinois. Specifically, prior to collecting the biometrics of any non-user from a photograph uploaded within Illinois, Facebook could have but failed to obtain, from the user uploading the photograph as the non-user's legally authorized representative, the requisite informed written consent on behalf of the depicted non-user. *See* 740 Ill. Comp. Stat. 14/15(a)(3) (requiring, prior to the collection of biometrics, "a written release executed by the subject of the biometric identifier or biometric information <u>or the subject's legally authorized representative</u>")) (emphasis added). Extraterritoriality is no obstacle to certification of the proposed non-user class.

Relatedly, Facebook argues that applying BIPA to prohibit the nonconsensual collection of a non-user's scan of face geometry presents issues concerning the dormant commerce clause that defeat class certification. The argument is without merit. To established this defense, Facebook must demonstrate that no technologically feasible way exists for the company to reasonably comply with BIPA in Illinois, without unduly burdening interstate commerce – a burden that clearly calls for the submission of evidence with class-wide applicability. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1103-1104 (N.D. Ill. 2017). Facebook has offered no evidence showing that it cannot comply with BIPA in Illinois without unduly burdening interstate commerce, which is unsurprising given that (1) Facebook concedes its facial recognition technology generates no revenue for the company and thus does not even implicate commerce, let alone implicate interstate commerce, much less unduly burden interstate commerce; and (2) Facebook's own documents demonstrate that the company can reasonably comply with BIPA in Illinois, without affecting let alone burdening commerce in any other state, by simply turning its facial recognition technology off with respect to photographs originating from devices that are assigned Illinois-based IP addresses.[3]

---

[3] Because only negligent violations of BIPA expose private entities to liability for damages under the statute, see 740 Ill. Comp. Stat. 14/20(1)-(2) (providing for liquidated statutory damages or actual damages against a private entity that "negligently" or "intentionally or recklessly" violates BIPA), Facebook could shield itself from liability for damages under BIPA by undertaking reasonable efforts to refrain from collecting scans of face geometry in Illinois absent the requisite consent, *see Moir v. Hart*, 189 Ill. App. 566, 567 (Ill. App. Ct. 1914) ("Negligence is the failure to bestow the care and skill which the situation demands, and if one exercise the degree of care required of a reasonably prudent man under the circumstances, he is not negligent."). *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (noting that BIPA "only subjects violators to statutory damages if there is negligence or willfulness," such that "Google could conceivably avoid liability by taking reasonable steps toward compliance [with BIPA]").

Finally, Facebook contends that "whether facial recognition was performed on a particular photo" is an individualized issue. Wrong. Facebook's own documents, as set forth in the expert report accompanying the user plaintiffs' reply brief, demonstrate that Facebook's facial recognition technology, by its very nature, necessarily requires uniform, across-the-board application to every uploaded photo depicting a human face. Otherwise, there is no way for Facebook to know whether a person depicted in a newly-uploaded photo matches a person corresponding to a face scan in Facebook's face database.

To the extent what Facebook belatedly revealed for the first time in its motion for summary judgment is true – that its facial recognition technology is not applied to photos uploaded to business or organizational pages, like the Glenview Patch page on which one of Gullen's two photographs was uploaded – this can be addressed by simply construing the phrase "whose face <u>was depicted in a photograph</u>" in Gullen's proposed class definition to mean "whose face depicted in a photograph, i.e.,<u>detected by Facebook's technology in a newly-uploaded photograph</u>." Because the first step in the facial recognition process is "face detection," construing the proposed class definition in this manner would exclude any individual whose face is depicted only in photos uploaded to business or organizational pages, i.e., whose face appears only in photos that are not subjected to Facebook's facial recognition technology (assuming what Mr. Yadan says is true).

Notably, in the opposition brief, Facebook does not dispute that a class-wide determination can be made as to whether the "face signatures" Facebook collects (from every face appearing in every photo) fall within the "scans of face geometry" within the

7

meaning of BIPA. Nor does Facebook dispute that a class-wide determination based on common proof can be made as to whether Facebook obtained the requisite prior informed consent prior to collecting a scan of face geometry from a member of the proposed non-user class. The answer to both of these questions is either yes or no for the entire non-user class.

Simply put: determining whether Facebook collected a scan of face geometry from a member of the non-user class, in violation of BIPA and in Illinois, and without violating the dormant commerce clause, turns on whether Facebook's facial recognition technology uniformly collects "scans of face geometry" from newly-uploaded photographs without first obtaining the requisite informed written consent; whether the circumstances relating to such collection uniformly occurred primarily and substantially in Illinois based on the criteria incorporated into the class definition; and whether a technologically feasible way exists for Facebook to achieve reasonable compliance with BIPA in Illinois without unduly burdening interstate commerce. Because these questions elicit the same answers for all members of the proposed non-user class, questions common to the non-user class members predominate.

**2. The Proposed Non-User Class is Not Unmanageable**

Facebook says the non-user action would be unmanageable on behalf of a class, arguing that "[i]t will be impossible to identify virtually any members of the Gullen class." (Opp. at 5.) The argument misses the mark. While it may not be possible for Facebook to identify members of the non-user class on its own, the manageability inquiry under Rule 23 is not so limited. The appropriate inquiry is whether maintenance of the action is manageable generally, through any reasonable means

available, which in this case includes self-identification by a putative class member as well as self-identification with the assistance of Facebook's technology.

As Gullen's motion for class certification explained, anyone who is aware of a photograph of herself or himself that has been uploaded to Facebook from within Illinois during the statutory period, just like Gullen and the proposed additional named plaintiff Clayton Zellmer recognized prior to lending their names to this litigation, is capable of self-identifying as a member of the non-user class. Thus, the mere filing of this case, without more, refutes Facebook's assertion that "it will be impossible to identify virtually *any* [class] members of the *Gullen* class." (Opp. at 5.) In terms of receiving notice of this litigation, members of the non-user class will be able to learn of the case and the criteria for establishing membership by way of court-approved publication notice and word of mouth, as well as other publicity concerning the action generally.

Facebook nonetheless argues that "[e]ven if a non-user reads such a notice, he will not necessary[ily] know (or have any way to determine) whether he has appeared in a photo uploaded to Facebook, let alone one uploaded from Illinois." (Opp. at 8 n.7.) This argument fails because Facebook does indeed have ways for a non-user to determine whether his or her data, including scan of face geometry, has been collected by Facebook. Specifically, Facebook has for several years maintained a website where a non-user can submit a "personal data request" to the company in order to obtain, inter alia, all of his or her data that Facebook has collected. *See* Personal Data Requests, Facebook: Desktop Help, https://www.facebook.com/help/contact/166828260073047 (last visited Apr. 23, 2017). Facebook can locate such data using the individual's e-mail address, full name, country of residence and year of birth. *See id*.

More recently, Facebook implemented a system that allows a user to upload a photograph of himself or herself to Facebook in order to find other photos in which he or she appears but as not yet been tagged:

> **Face Recognition**
>
> **Introducing Face Recognition For More Features**
> Hi David, we're always working to make Facebook better, so we're adding more ways to use face recognition besides just suggesting tags. For example, face recognition technology can do things like:
>
> • Find photos you're in but haven't been tagged
> • Help protect you from strangers using your photo
> • Tell people with visual impairments who's in your photo or video
>
> You control face recognition. This setting is off, but you can turn it on any time, which applies to features we may add later.
>
> –The Facebook Team
>
> Learn More       Go to Settings

*See also* Managing Your Identity on Facebook with Face Recognition Technology, Facebook, https://newsroom.fb.com/news/2017/12/managing-your-identity-on-facebook-with-face-recognition-technology/ (last visited Feb. 9, 2018); Facebook Introduced Face Recognition Feature, TechieLobang, https://techielobang.com/blog/2017/12/20/facebook-face-recognition-feature/ (last visited Feb. 9, 2018). In other words, this technology compares the subject face against every other face that has ever appeared in any photo that anyone has ever uploaded to Facebook.

The same type of technology described above could be used by Facebook to help solve the manageability issues it claims exist with respect to the non-user class. Specifically, an individual who is unsure whether his or her photograph has been uploaded to Facebook from an Illinois-based IP address during the statutory period could easily identify as a member of the non-user class by uploading a photograph of his or her face to Facebook and requesting – only after first providing the requisite informed written consent, of course – that Facebook analyze the face and determine whether any

10

photos depicting the same face have been uploaded to Facebook, and thus determine whether any scans of face geometry from that face have been collected by Facebook during the statutory period. Such a process, coupled with self-identification with affidavits, would allow for uniform and reliable determinations of class membership.

At the end of the day, maintenance of any complex class action of this scale will necessarily involve some self-identification aspect – rendering it unmanageable in the eyes of defendants like Facebook but nonetheless sufficient to satisfy Rule 23 according to the Ninth Circuit. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) (holding that proponents of class certification are not required to demonstrate an administratively feasible way to identify class members as a prerequisite to class certification); *see also id.* at 1131 (at "the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims"); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (rejecting defendant's argument opposing class certification that class members would have to self- identify and show "what they paid, where they purchased it, and how many times, plus whether they saw and were deceived" by a product's label); *See, e.g., In re Lidoderm Antitrust Litigation*, 14-md-2521 (N.D. Cal. Feb. 21, 2017) ("Defendants argue that given the very complex class definitions at issue, including the numerous exceptions, as well as the lack of reliable data to identify EPPs, plaintiffs have not shown that the EPP class is 'administratively ascertainable.' However, the class definition – while somewhat

complex – is based on objective criteria that allow potential class members to determine whether they are included in the class.").

### 3. Facebook's Concern for Due Process is no Bar to Certification

Grasping at straws, Facebook argues that its <u>right to due process</u> "forbids" non-users from collectively seeking redress from its BIPA violations, apparently based on the belief that it has a constitutional right to break the law inexpensively. The argument is nonsense.

A statutory damage award violates due process only where it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). The potential class-wide damages award in this case comes nowhere close to that level. As this Court has recognized, BIPA gives individuals in Illinois the right to say "no" to Facebook's presumptuous, wholesale arrogation of their biometric identifiers, and entitles individuals aggrieved by a BIPA violation to recover a fixed liquidated damage amount of either $1,000.00 or $5,000.00. BIPA's liquidated statutory damages figures are clearly not reasonable on a per-violation basis, and Facebook does not argue otherwise. It thus makes logical sense, and is certainly not "wholly disproportionate or obviously unreasonable," to hold Facebook liable for a class-wide damages award that equates to the statutorily-authorized per-violation damages figure multiplied by the number of class members who suffered violations. Such an award would provide each class member the liquidated amount to which he or she is entitled and is perfectly proportionate to the unprecedented scale of Facebook's violation in this case.

Facebook has also failed to establish that the potential class-wide statutory damages award in this case would be sufficiently "severe and oppressive" to even possibly implicate due process concerns. *See St. Louis*, 251 U.S. at 66. Instructive on this point is *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. 2003), a case in which the plaintiff-appellant had sued Time Warner for violating the provisions of the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 et seq., and several state consumer protection laws, by selling and disclosing personally identifiable subscriber information to third parties, and by failing clearly and conspicuously to inform the subscribers of such disclosure, as required by the Cable Act. Parker sought monetary relief in the form of statutory damages, actual damages, punitive damages and attorneys' fees, as well as declaratory and injunctive relief to prevent further statutory violations. Prior to the commencement of any discovery or the filing of a motion for class certification, the district court granted Time Warner's motion to deny class certification of a damages class on due process grounds, reasoning that class certification would result in "a damages award . . . disproportionately large compared to the harm actually suffered by the potential class members," causing "the financial demise" of Time Warner. *Parker*, 331 F.3d at 21 (paraphrasing district court). The Second Circuit reversed, rejecting as premature the district court's conclusion that a class-wide damages award would have violated Time Warner's due process rights, because there was "no evidence regarding the size of the recovery that Time Warner might face if the class claims were successful." *Id.* at 22. Thus, the Second Circuit reasoned that the district court's "conclusion that the size of the class would inevitably lead to "the

financial demise" of Time Warner, *Parker*, 198 F.R.D. at 384, or even to significant manageability problems, was speculative. *Id.*

Similarly, in this case, Facebook has presented no evidence to support of its due process-based defense concerning the severity or oppressiveness of its potential class-wide damages liability. Facebook has submitted no evidence concerning its ability or inability to pay a projected class-wide damages award, and thus cannot show that a finding of liability on behalf of the non-user class would "inevitably lead to 'the financial demise'" of Facebook. Consequently, Facebook has failed to satisfy its burden to establish its affirmative defense that imposing class-wide liability would violate due process.

Even if Facebook had presented evidence that a class-wide statutory damages award to the non-user class would inevitably lead to the company's "financial demise", the due process clause would still be no defense to class certification or liability, but rather at most a basis for the Court to reduce the aggregate damages award to the class at the conclusion of the litigation. *See id.* ("And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.").

**C. The Requirements of Rule 23(b)(3) are Satisfied for the Non-User Class**

Facebook's opposition to Gullen's request to certify an injunctive relief class pursuant to Rule 23(b)(3) is baseless.

Facebook argues that it has not "acted or refused to act on grounds that apply generally to the class" (Opp. at 9 (citing Fed. R. Civ. P. 23(b)(2)), characterizing as "flatly false" the assertion in Gullen's motion for class certification that Facebook "collects a

14

scan of face geometry from every face appearing in every photo uploaded to its website." (Opp. at 9 (alternations omitted).) As discussed above, and as set forth in the expert report submitted by plaintiffs' expert witness (filed as an exhibit to the reply in support of the user plaintiffs' motion for class certification), Facebook certainly does collect scans of face geometry from every face appearing in every photo uploaded to its website. Omry Yadan's statement that an exception exists for business/organizational pages is inconsistent with the discovery produced in this case and the source code reviewed by plaintiffs' experts, and need not be taken as the gospel truth at this stage of the litigation. Gullen has sought to depose Mr. Yadan to test the veracity of these statements. To the extent Mr. Yadan's statements are true, Gullen has sought to address them by requesting leave to join an additional plaintiff who was not at all implicated by the business/organizational page distinction, and has also proposed construing the phrase "whose face <u>was depicted in a photograph</u>" in Gullen's proposed class definition to mean "whose face depicted in a photograph, i.e.,<u>detected by Facebook's technology in a newly-uploaded photograph</u>," which would reasonably account for this new information without requiring further amendment.

Facebook says certification of an injunctive relief class would be inappropriate because some people in Illinois like tag suggestions. Whatever benefits or social utility some in Illinois might enjoy from Facebook's "tag suggestions" feature (*see* Opp. at 11-12) – which, again, is powered by Facebook's collection of scans of face geometry from every person appearing in every photograph uploaded to its site, including from members of the non-user class – is plainly insufficient to override the Illinois legislature's judgment that individuals like Gullen have the right to say no to

15

Facebook's collection of their highly-sensitive biometric data. Facebook violated Gullen's right to say no, and it violated the right to say no of millions upon millions of other members of the non-user class.

The proposed injunctive relief class should be certified, and Facebook should be enjoined from collecting scans of face geometry from photographs uploaded from within Illinois.

**D. Gullen is a Typical and Adequate Proposed Class Representative**

Gullen is typical because Facebook nonconsensually took his scan of face geometry from a photograph uploaded to the Glenview Patch page from within Illinois, as set forth above. To the extent Mr. Yadan's eleventh-hour assertions are true, then the claims of Mr. Zellmer, the proposed class representative who Gullen seeks to join, are certainly typical of those of the non-user class members.

Facebook proceeds to attack Gullen's adequacy, stating that he "knows almost knothing about, and has constributed almost nothing to, his action." (Opp. at 12.) That is nonsense. Gullen knows plenty about this case, especially for someone who has specifically chosen not to enroll in any of Facebook's services and is thus not familiar with the technical details of the those services. In addition to being factually inaccurate, Facebook's attack on Gullen's knowledge manifests a misunderstanding of the law in the Ninth Circuit, which provides that "[t]o establish adequacy, class representatives generally need only to be 'familiar with the basis for the suit and their responsibilities as lead plaintiffs' such that they can uphold their obligations to other class members." *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2016 U.S. Dist. LEXIS 178148, at *22 (N.D. Cal. Dec. 22, 2016); *In re Live Concert Antitrust Litig.*, 247 F.R.D.

98, 120 (C.D. Cal. 2007) ("All that is necessary is a 'rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.' The degree of knowledge required is lowered if the case involves complicated legal issues."). Gullen easily satisfies this standard. As courts oft-caution, "[p]ermitting defendants to police the adequacy of class representatives and their counsel is like 'permitting a fox . . . to take charge of the chicken house.'" *In re Pfizer Secs. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) (collecting cases).

## II.   CONCLUSION

The Court should enter an order (1) certifying the Non-User Class pursuant to Rule 23(b)(3) and/or Rule 23(b)(2); (2) appointing Plaintiff Gullen as Class Representative; and (3) appointing Carey Rodriguez Milian Gonya, LLP as Class Counsel.

Dated:  January 9, 2018                           Respectfully submitted,

By: */s/ Frank S. Hedin*

**CAREY RODRIGUEZ MILIAN GONYA, LLP**

Frank S. Hedin (CA SBN 291289)
fhedin@careyrodriguez.com
David P. Milian
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

Francis A. Bottini, Jr. (175783)
fbottini@bottinilaw.com
Albert Y. Chang (296065)
achang@bottinilaw.com
Yury A. Kolesnikov (271173)
ykolesnikov@bottinilaw.com
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037

Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Counsel for Plaintiff and
the Putative Non-User Class*